CHITTENDEN,
January,
1843.

Chipman
v.
Bates.

---

## John Chipman v. Seth Bates.

In a plea of justification under a search warrant, it is not necessary to allege that the complaint was signed, or any minute made of the day, month and year when exhibited; or that any recognizance for cost was given, or that the warrant was returned; nor is it necessary to state the grounds of suspicion of the person praying out the warrant.

If the officer enters the dwelling house of the person against whom the process issues, the door being open, and without doing any unnecessary damage, to execute the same, the owner of the house cannot maintain trespass against the party who prays out the process, although the goods were not found.

*Quere.*—Whether the party would be liable in such action, if the door had been forcibly broken open by the officer.

THIS was an action of trespass in three counts, for breaking, and entering, the dwelling house of the plaintiff; to the last of which the defendant pleaded in bar, a justification under a search warrant, setting forth that he had been lawfully possessed of a certain ram, which had been stolen from him; that, upon his complaint, on oath, that he had reasonable, probable and sufficient cause to suspect and believe that said ram was by the plaintiff, knowing said ram to have been stolen, secreted in his dwelling house, a warrant was issued by a justice of the peace, directed to the constable of Essex, commanding him to enter said dwelling house in the day time and search for said ram; that the said constable, and the defendant as his servant, and by his command, in virtue of said warrant, in the day time, peaceably and quietly entered into the said dwelling house, and cellar of the plaintiff, the outer door thereof being then and there

open, in order to search for and find the said ram, so stolen as aforesaid, and for no other purpose whatever—doing no unnecessary damage to the plaintiff, nor creating unnecessary disturbance in said dwelling.

To this plea there was a demurrer. The court adjudged the plea insufficient; to which the defendant excepted.

*C. D. Kasson*, for defendant.

The demurrer being *general*, the plea must stand or fall, as it shall be found good or bad in *substance*, without regard to its mere form. 1 Chit. Pl. 701–3.

I. The objection that the cause or ground of the "belief" or "suspicion" is not stated, is one of *form* only. The substantive averment consists in this—that the defendant had "*sufficient cause*" &c., and it is for the *jury to find*, from the *evidence*, whether this be true. *Davis* v. *Russell et al.* 5 Bing. 354; 2 Ld. R. 1301; *Beckwith* v. *Philly*, 6 B. & C. 635; *French* v. *Smith et al.* 4 Vt. R. 366; 1 Chit. Pl. 713, 719, 722.

Admitting it to be a *compound of law and fact*, it does not vary the case; for almost every proposition which is a bar to the action, consists of such a compound.

*Non est factum* does not require the defendant to state the *reason why* it is not his deed. He may show it a forgery, or obtained by duress, or fraud. He may show a want of delivery, or any thing else, which, when proved, the law adjudges to amount to the proposition that it is not his *deed*.

So of *son assault demense*; he need not allege the *manner*. And so of all other propositions which are a *bar* to the action.

In an action for malicious prosecution, the defendant may simply traverse the "probable cause."

All those cases wherein the contrary doctrine has seemingly been holden, were actions for *false imprisonment*, where the arrest was made *without lawful warrant*. But no case is to be found, where, when the proceeding was had *under the authority of the law, as here*, the defendant was ever bound to set out the evidence, which tends to prove the fact of "*probable cause.*"

The law has reposed *in the magistrate* the power to de-

cide upon the cause for issuing a warrant. He has decided; and this court cannot, in this collateral manner, call in question that decision. The only question is—had the defendant cause for making the complaint? If this be not so; if the court can claim to have all the *complex circumstances* spread upon the record *for their decision*, it would oust the defendant of his *trial by jury;* it would leave the court to decide upon the *weight* and *force* of each *circumstance in evidence*, in proving the " probable cause," which is clearly the province of a jury. *French* v. *Smith*, 4 Vt. R. 366 ; 1 Chit. Pl. 258.

It would be *impracticable* to state the ground of suspicion. The cause of it is often of such a nature as to preclude the spreading of it on the record ; or such as to make it too prolix. Public rumour, and the source of it ; words spoken by particular individuals, and the relation they bear to the parties ; the mode of expression ; hints ; ironical or satirical remarks,and their circumstances ; looks ; vague surmises; winks, nods, and other obliquities and their occasions are but a few of the means of insinuation, which may or may not, as circumstances shall indicate, induce belief and justify prompt action ; and which it would be impossible to give an idea of to the court. 1 Chit. Pl. 262, 270, 567. (n. 2.)

II. The remaining and main question is, whether with " sufficient cause of suspicion" a search warrant, in due form, is a justification of a party, in entering the house *unless he find the property?*

1. The court will observe, that *the plea shows a felony had been committed :* and this will dispose of a large class of cases which may seem to militate against our position, and which I shall not again notice.

Whatever the *common law* might have been, *anciently*, we contend, that, by virtue of Art. IX. of the declaration of rights in the constitution of Vermont, and also the 4th Art. Amend. Con. U. S., together with our state legislation on the same subject, (Rev. Stat. Vt. p. 177) the common law, *if it ever existed* to the contrary, is unqualifiedly abolished.

2. It is a curious fact, that while most elementary writers lay down the law in the negative of the proposition, not a single *adjudged case* is to be found to support their *dicta ;* and 2d, that all later writers refer to Lord Hale as their au-

CHITTENDEN,
*January,*
1843.

Chipman
*v.*
Batas.

thority, Hal. P. C., and he cites some Mss. in the time of Hen. 2d. This is the evidence of what the common law *was*. Since that time, either Parliament has enacted some statute to remedy the evil, or else that is not considered the law now, or we should find some cases of less remote antiquity.

The later cases, what we do find, seem to indicate that the English courts are, whatever might have been the law, inclined to make it conform to the advancing civilization. In *Samuel* v. *Payne*, Doug. 260, *the goods were not found*, and the court held ultimately, that if *a felony had been committed*, it would, with *probable cause*, justify the *complainant* in arresting ;. but as to all but him the *mere charging* of *the felony whether true or false* was *sufficient*.

This doctrine is since recognized in *Davis* v. *Russell*, 5 Bing. 354, by Park, J.; and by Littledale, J., in *Beckwith* v. *Philby*, 6 B. & C. 637, where, if any *actual felony* have been committed, the complainant may justify on showing *probable cause*.

Those were cases of false imprisonment to be sure; but, certainly, personal liberty is quite as sacred as rights of property.

If the common law ever stood as contended by the plaintiff, it was a manifest relic of an antiquated feudal barbarism ; and such an one as the courts of America will not readily adopt.

The only cases we have been able to find in the United States, are *Bell* v. *Clapp*, 10 J. R. 263, where the goods were found, though the court lay no stress on that fact; and *Beatty* v. *Perkins*, 6 Wend. R. 382, where the *goods were not found ;* and though the warrant issued on the *mere allegation* of the defendant without apparent " probable cause," the court held, after a thorough review of all the authorities, that *it was a good justification*. The last case is identical with this.

3. There is another view of the case, arising out of the cases above cited, which is conclusive against the plaintiff's action. The plea shows that the defendant entered under the authority of the *law*, and *as the servant, and by the command of, the proper officer of the law*.

, This, as regards the *vi et armis*, is the *act of the law*, and justifies the *force*, &c.

And it is well settled, both in England and this state, that <span>CHITTENDEN,<br>*January*,<br>1843.</span> in *trespass*, where the act is done under authority of *legal process*, the *"virtute cujus"* is *not traversable*. The attempt here is to show that the defendant, though acting under the law, wrongfully *set the law in motion*. This cannot be done. And it presents a fine illustration of the true distinction between trespass, *vi et armis*, and *on the case*—the one is applicable where the injury is *direct* and *immediately consequent* upon the *unlawful act*—the other where the injury, or its immediate cause, is only consequential, and remote, from the *unlawful act*.

Chipman
*v.*
Bates.

The *entering of the house was legalized* by *our* statute. Hence *that act was not unlawful.* If there was any thing *unlawful*, it was the act of the defendant in *making the complaint ;* but for this the plaintiff could not have *trespass*, for it lacked the *vi et armis*, and could work no injury *in and of itself.* If it wrought an injury, it was by *setting the law in motion* to do the *forcible* acts. In this view it likens itself to a case of *malicious prosecution.* Ham. N. P. 114, 121–2 ; 1 Ld. R. 412 ; 1 Saund. 298 ; 11 Vt. R. 22 ; 3 East R. 593 ; 1 Chit. Pl. 152 ; 3 T. R. 185 ; *Boot* v. *Cooper*, 1 T. R. 535.

*J. Maeck,* for plaintiff.

Two questions arise in the present case : first, is the plea sufficient ; second, if the plea is not sufficient, then is the declaration sufficient in form and substance, and appropriate to the cause of complaint.

I. The plea : which it is contended is bad. The plea attempts to set up a justification under process of an inferior court. The process was one of an extraordinary character, unknown to the common law ; (Coke, 4 Inst. 176 ; 1 Chitt. Crim. L. 64) a process which, in its execution, most deeply affects the feelings and character of the individuals who are made subject to its operation. It is highly proper that it should be watched with great jealousy by the higher tribunals ; and no justification under it is ever to be held good, unless the party shows by his plea that he has conformed himself to the law in every particular, in praying out, and executing the warrant. He is bound, in pleading, not only to set forth the warrant itself, but a justifiable cause for

praying it out ; and to show that he has conformed himself to all those requisitions which the law has made necessary to warrant the magistrate in issuing it. 1 Chitty's Pl. 205 ; *Green* v. *Jones*, 1 Saunder's R. 298.

If, to give the magistrate jurisdiction and authority to issue the warrant, there were certain things to be done which were not done, then the whole proceedings were absolutely void. The party is considered, in law, as proceeding without any legal authority whatever. None of the authorities pretend to countenance the proposition contended for by defendant, that case must be the remedy where the act was done under the authority of a court of competent jurisdiction, unless the process was *regular.* 1 Chitty's Pl. 127 ; 3 Term R. 185 ; *Boot* v. *Cooper*, 1 T. R. 535 ; 11 East, 107 ; 1 Camp. 295.

But if the process were irregular, as when it was granted without oath, trespass is the proper remedy, even against the magistrate. Chitty's Pl. 125 ; *Morgan* v. *Hughes*, 2 Term R. 235.

The plea, then, not setting out sufficient to show the magistrate had authority to issue the warrant, the process is irregularly issued.

1. It is not alleged that the complaint was signed. Signing is obviously contemplated by the statute, as it ought to be preserved on file.

2. It is not alleged that the magistrate, before issuing the warrant, minuted on the complaint the true day, month and year when the same was exhibited and filed in his office. Old statute, page 289, section 5. For want of this, it is held the whole proceedings are a nullity. *State Treasurer* v. *Cook*, 6 Vt. R. 283.

3. It is not alleged that the magistrate took any bonds from the prosecutor to the plaintiff for costs. Old statute, 127, sec. 10.

All these are positive requirements of the statute, are required to be done by the magistrate before he has any authority to issue his warrant ; and if he issues his warrant without them, the whole proceeding is nugatory. So far as the party is concerned, the question is not whether the warrant is good on the face of it, but has he and the magistrate done all the law requires to authorize it. See again

Chitty's Pl. 128, 2 Term R. 235, 2 Chitty's R. 304, 1 D. & R. 97.

It is not averred that the search warrant has been returned. The defendant here attempts to justify under an authority in law. If he fails in doing all the law requires of him, he becomes a trespasser *ab initio ;* and this rule holds so far as regards the return of the process, though the act may be a mere nonfeasance. " If a sheriff have not returned a writ ' which ought to have been returned, he becomes, although ' this be only a nonfeasance, a trespasser *ab initio,* as to ' every thing which had been done under it." Salk. 409, Ld. Raymond, 632; Cro. Car. 446; 6 Bacon's Ab. 561, Willson's ed. The party, as he set the process in motion, stands in the same predicament.

Again : The plea does not set forth any fact existing, which would justify Bates in supposing, or believing, Chipman had stolen his property, or had it secreted. It merely sets forth " that Bates had reasonable, probable cause and ' sufficient grounds to suspect, believe, &c." What is there here for the plaintiff to traverse but conclusions of law, which are not traversable ? The facts which constitute these grounds should have been set forth. *Marl* v. *King,* 4 Taunt. 33 ; *J. Anson* v. *Stewart,* 1 Term R. 748. Stephen on Pleading, 385, 386. See the precedent for a plea of this description, 3d vol. Chitty's Pl. 1081.

Lastly: The plea does not show the property was found on search ; consequently process affords no justification, and the action of trespass lies. So are the authorities. 1 Esp. N. P. 399 ; Hale's Pl. 150 ; 1 Swift's Digest, 405, 496 ; 2 Hale's Pl. 114, 151 ; Conductor Generalis, 314, title Search Warrant; *Entick* v. *Carrington,* 2 Willson, 291–2, 382, 495 ; *Bostock* v. *Saunders,* 3 Willson, 440 ; 3 Jacob's L. D. 610. See the cases cited in 6 Wendell ; and on examination, it will be found the cases there cited by Judge Savage do not sustain the opinion of the judge.

In *Bostock* v. *Saunders,* De Grey, Ch. J. said that unless the goods were found, the party could not justify, but was a trespasser. The same language is held in all the cases. A single case only is found to the contrary, *Beatty* v. *Perkins,* 6 Wendell, 382. In the case in 10 Johns. 263, referred to in that case, the goods were found ; therefore, in

that case, the event justified the process. The case in Wendell attempts to limit the doctrine of Lord Hale to the case where doors are broken and no property found ; and it would seem the court, in the case in Wendell, admit if doors were broken and the property is not found, then the process affords no justification. But Lord Hale did not so limit his doctrine, though he was favorable to search warrants. But the great argument of Judge Savage is, that it was an act done under process of a court, and trespass would not lie, but case was the proper remedy. Why, let us ask, if he is correct on the ground he proceeds upon, if it was necessary to break doors to execute the warrant, should not the action be case in both instances ? That the action of trespass will lie against a party who enters the plaintiff's house to execute a search warrant, unless he finds the property, has been too long and firmly settled by a series of decisions, to be shaken by any doubts thrown over it, by a single case. Though sustaining trespass in such cases may not so well harmonise with the principles of the two actions as to sustain case, yet the dividing line between the two actions it is sometimes difficult to find. No great principle would be sacrificed if it was entirely destroyed ; and the principle that trespass will lie having been long sustained, it ought not now to be disturbed. It is better to stand to decisions, that the people may know what the law is, than, by questioning the principles on which they are founded, and overturning them, constantly to increase the doubts, confusion and uncertainty as to what the law is. To revolutionize the law is the proper province of the legislature ; but the duty of the judge, as we understand it, is, to administer the law as it has been administered by his predecessors ; to follow in the course of decisions, though in his own opinion, a better course might have been originally adopted. In the case of *The King* v. *Wheatly*, 2 Burr. 1128, Lord Mansfield says " when the law is established, ' and settled, on whatever grounds it was originally establish- ' ed, yet it ought to be adhered to."

The opinion of the court was delivered by

WILLIAMS, Ch. J.—The third count in the declaration is in trespass for breaking and entering the dwelling-house of

the plaintiff. The plea justifies the breaking, &c., under a search warrant. This plea is demurred to.

A warrant of this description is recognized both by our constitution and laws, and the authority of a justice of the peace, to issue such a warrant has never been questioned. The constitution requires, that such warrants shall not issue, without oath or affirmation first made, affording sufficient foundation for them ; and the oath must disclose that goods have been stolen, and that the applicant suspects they are concealed in a place, which he wishes to have searched. We do not discover either from the nature of the process, or from the forms, that it is necessary, that any complaint should be signed by the applicant, nor that any minute should be made of the day, month, and year, when presented ; or that any recognizance for cost should be given, or that it should be returned, if the goods are not found. Indeed, these requirements are only necessary, when a complaint is made, which is intended to be the incipient step, in a prosecution against any one for an offence. The object of a search warrant is, to obtain the goods, and to bring the person, in whose custody they are found, either to be recognized as a witness, or to be subject to such further proceedings as the ends of justice may require. The magistrate must determine whether there are sufficient grounds to require the issuing of the warrant ; and these grounds need not, and cannot well be stated, in a plea justifying proceedings under the warrant. The mere formal objections to the validity of the plea have not, therefore, stood in the way of our determining its sufficiency on its merits.

The main and important question is, whether, as it is not stated in the plea, that the stolen goods were found, the warrant will justify the person who procured it to be issued.

The authority of a sheriff, or other officer, in the execution of a search warrant is, to enter the house in the day time, the doors being open and make search for stolen goods ; and thus far, he has the same authority as he has in the service of civil process ; by virtue of which he may peaceably enter the dwelling house, to serve the same, the doors being open. He may, however, do something more to execute a search warrant. He may break open the doors to execute the same, if admittance is denied, and whether the

CHITTENDEN, goods are found or not, the officer and his assistants are
January, justified. But, according to the opinion of Lord Hale, the
1843.

Chipman party who prays it out, is liable in an action of trespass, if
v. the goods are not found. And indeed, it would seem to be
Bates. reasonable, that, as in every case, a person who is proceeded
against, on the complaint of a private individual, is to have
indemnity for his costs, so in this case, he should have redress
for any injury he may sustain, if the complaint is unfounded,
without any inquiry as to the motives which led to the pros-
ecution, except so far as they might enhance or lessen the
damages. The opinion of Lord Hale has been questioned
and directly overruled in the case of *Beatty* v. *Perkins*, 6
Wendell, 382; and were it necessary, in this case, to reject
the authority of Lord Hale, and adopt the principle of the
case last mentioned, the court are divided in opinion, and
this cause would be postponed for further argument. I, for
one, should be disposed to recognize this opinion of Hale,
as the safer and better law, and, indeed, as the settled doc-
trines of the common law, from which we are not at liberty
to depart.

Lord Hale says, 2 P. C. 151, "Whether the stolen
' goods are in the suspected place or not, the officer and his
' assistants, in the day time, may enter *per ostia apertia*, to
' make search; and it is justifiable by this warrant. If the
' door be shut, the officer, after demand to open it and refu-
' sal, may justify breaking the door whether the stolen goods
' are there or not; but as to the party, upon whose sugges-
' tion the warrant issued, the breaking the door is, *in eventu*,
' lawful or unlawful; viz., lawful, if the goods are there,
' unlawful if they are not there." From this opinion it
seems the party is only liable, when the doors are forcibly
broken open; and there can be no good reason why, as to
the officer and party, the entry without force, the doors being
open, should not be justified, as it would be, in case the
officer entered to serve civil process. The owner of a dwell-
ing-house has the privilege of closing his doors, to protect
his family in every case, except when the administration of
public justice requires that they should be opened, even
against his will. The reason given for this, is, "that the
' family within doors shall not be left naked and exposed to
' robbers from without." But if his doors are left open, he

permits them to be thus exposed, and every part of his dwelling-house is within the precinct of an officer, who has either civil or criminal process to be executed therein. In the plea in this case, it is averred that the entry was peaceably made, the doors being open ; and any forcible breaking open of any doors is denied ; and, on this ground, we are of opinion that it discloses a sufficient justification. The judgment of the county court is, therefore, reversed, and judgment must be rendered for the defendant to recover his cost, as the other issues were found in his favor in the court below.