## State *v.* York *et al.*

Prior to the revision of the statutes, in 1842, the proceedings in this State upon the trial and indictment of principal and accessory to a felony, were governed by the rules of the old common law, as modified by the statute, 1 Anne, c. 9; and the accessory could be indicted and tried with the principal, but could not be tried separately until the principal had been convicted. Revised Statutes, chap. 221, sec. 1, which enacts that the accessory may be tried either before or after the principal, does not change the rule of the common law, that he may be indicted and tried with him.

The confession of one under arrest for the commission of a crime, that he did commit it, is inadmissible as evidence against him upon the trial of an indictment for the offence, when it appears that the officer having him under arrest, said to him, immediately before the confession, "If you are guilty you had better own it."

The indictment charges Elizabeth York with burning the barn of Joseph Corson, at Raymond, in said county,

State *v.* York.

on the 21st day of April, 1857, and Sarah P. Leavitt with hiring and procuring Elizabeth York to burn said barn.

After the respondents had been arraigned and severally pleaded not guilty, and after the jury had been sworn to try them, and the indictment had been read to the jury, the respondents' counsel objected that they could not be indicted together, or tried at the same time, but did not move the court that they be tried separately.

The trial proceeded against both respondents, the court excluding all confessions of either respondent going in any degree to implicate the other. The evidence against each was separate and distinct, and wholly from different witnesses. That against Elizabeth York was first put in, and afterwards that against Sarah P. Leavitt.

The court instructed the jury that they should consider the cases of the two respondents as entirely distinct and independent of each other; that they should first inquire and decide upon the guilt or innocence of Elizabeth York, without any reference to the guilt or innocence of Sarah P. Leavitt, or the evidence against her; that if they found Elizabeth York not guilty, they would, as a necessary consequence, return Sarah P. Leavitt not guilty; but if they found Elizabeth York guilty, they would consider and weigh the evidence against Sarah P. Leavitt, and upon that alone determine the question of her guilt or innocence.

The jury first returned their verdict that Elizabeth York was guilty, and afterwards that Sarah P. Leavitt was guilty.

Among other evidence of confessions, as well as corroborating circumstances introduced against Elizabeth York, Benjamin S. Clifford, the officer by whom she was arrested, testified that after her arrest he had a conversation with her in relation to where she went, and where she was on the day and at the time of the burning of the barn; that, after talking with her some time on this subject, he

State *v.* York.

advised her that if she set the barn on fire, she had better own it. Thereupon at first she said it would not do for her to own it, but very soon afterwards, and without any further suggestions by him, she stated that she set the barn on fire by throwing a lighted match into a quantity of hay piled up against the barn, and proceeded to describe where she went and what she did afterwards, and told him where she obtained the match. The witness stated that no inducement whatever was held out to the respondent, by him or any other person, previous to her confession; that no threats or promises were made to her, nor was any advice given to her other than he had stated; and that no reason was assigned to her why she had better own it, if she were guilty. To the admission of the evidence of this confession objection was made, but it was admitted.

The respondents moved for a new trial, on account of the alleged improper admission of this evidence. They also moved in arrest of judgment, because both were tried at the same time, and because the indictment against them was "informal, illegal, and insufficient in law to hold them to answer thereto."

*Wood*, for the respondents.

The motion in arrest should prevail. Accessories before the fact cannot be tried with the principal. Comp. Stat., chap. 235, sec. 1; *Cane* v. *Phillips*, 16 Mass. 443; *State* v. *Graff*, 1 Murphy 270; *Harty* v. *State*, 3 Black. In. 386; 2 Burr's Trial 440; *Sampson* v. *Cane*, 5 W. & Sarg. 385; Barbour's Crim. Law, (2d ed.) 291.

The testimony of Clifford was inadmissible. Arch. Cr. Pr. 125; *Rex* v. *Lewis*, 4 Carr & P. 387; *Rex* v. *Gibbons*, 11 Carr & P. 97. Any advice, by a person having authority over the prisoner, that he had better confess, renders the confession incompetent. Whar. Cr. L. 317; 2 East Pl. Cr. 659; *Rex* v. *Drew*, 8 Carr & P. 146; *Rex* v. *Thomas*, 6 Carr & P. 353.

*C. H. Bell*, (solicitor) for the State.

At common law the best and usual course was to try the principal and accessory together, the jury being instructed, as in this case. 1 Chit. Cr. L. 219, 224 ; Whar. Am. Cr. L. 121 ; 1 Russell on Cr. & Mis. 38 ; *Harty* v. *State*, 3 Black. Ind. 386 ; *Commonwealth* v. *Andrews*, 3 Mass. 136.

Has the common law been changed by our statute on this subject? There are no words in Comp. Stat., chap. 235, sec. 1, directing that an accessory shall be tried before or after the principal, and not otherwise. The common law method of procedure is not taken away. Story on Contracts (2d ed.) 593, note ; 1 Kent's Com. 464 ; Whar. Am. Cr. L. 81 ; 1 Russ. Cr. & Mis. 50. The nature of the mischief to be remedied by the statute indicates also that the legislature did not intend to abolish the common law mode of proceeding.

The object of the rule in relation to confessions is to exclude those which are untrue, but made under the influence of hope or fear. The reason of the rule would allow the confession made in this case to be received in evidence. *Rex* v. *Court*, 7 C. & P. 486 ; *Rex* v. *Thomas*, 7 C. & P. 345 ; *Rex* v. *Hodgdon*, 2 Stark. Ev. 37, (n.)

SAWYER, J. By the common law an accessory could not be punished until the guilt of the principal had been established. Roscoe's Cr. Ev. 218* ; Russell on Crimes 21, n. A ; Whar. Cr. Law, Tit. Accessories. Before the statute of 1 Anne, chap. 9, in England, whenever the attainder of the principal was prevented by his death, pardon, or being admitted to benefit of clergy, whether before or after his conviction, the accessory could not be arraigned. But where the principal was attainted, that is, had received judgment of death, upon conviction by verdict, plea of guilty, or outlawry, his subsequent death or pardon would not avail the accessory. Hawkins' Pleas of

State *v.* York.

the Crown 311; Hale's Cr. Law 222*. In Hawkins it is said, page 323, if the principal plead not guilty, the accessory shall be put to plead also, and if he likewise plead the general issue, both may be tried by one inquest; but the principal must be first convicted, and the jury are to be charged that if they find the principal not guilty, they must also acquit the accessory. In Foster's Crown Law 361, it is laid down that the accessory cannot be brought to trial without his own consent, until the guilt of the principal is legally ascertained by his conviction or outlawry, unless they are tried together; and if they are joined in one indictment, and tried at the same time — which it is said is conceived to be the most eligible course where both are amenable — the accessory may enter into a full defence of the principal, and avail himself of every matter of fact and point of law tending to his acquittal. Foster's Cr. Law 365; 1 Chit. Cr. Law 255* and 266*. By the statute, 1 Anne, chap. 9, if the principal be convicted, and before attainder — that is, before receiving judgment of death or outlawry—he dies or is pardoned, the accessory may be proceeded against, as if the principal had been attainted. Roscoe's Cr. Ev. 218. But under this statute, as well as by the old common law before its enactment, principal and accessory might be indicted, arraigned and tried together. 4 Black. Com. 323, 324. The object and effect of this statute of Anne were merely to modify the old common law, so far as to allow the accessory to be tried, notwithstanding the attainder of the principal had been prevented by reason of his death, pardon, or the like, after he had been convicted. The subsequent statute of 7 George 4, chap. 64, by which the statute of Anne was repealed and its provisions reënacted, also introduced in England a still greater relaxation of the old common law rule. The 9th section of this statute enacts that the accessory may be indicted and tried with the principal; thus affirming the old common-law doctrine upon that

point; reënacts the provisions of the statute of Anne, that he may be tried separately, after the conviction of the principal, without his attainder; and then subjects the accessory to prosecution, from which, before, he was exempt in those cases where the principal had not been previously convicted. Under the old common law the accessory, when tried separately, could be convicted only upon proof that the principal had been attainted. Under the statute of Anne, proof that he had been convicted was sufficient, while, under the last named act, which still remains the law of England, the accessory may be indicted, tried and convicted without proof of any proceedings against the principal; but at all times in England, under every state of the law, he might be indicted and tried with the principal.

I have found no statutory provisions in this State on the subject of the indictment, trial or conviction of the accessory in reference to that of the principal, prior to the Revised Statutes, chap. 221, by which it is enacted that accessories shall be punished in the same manner as the principal, and may be tried and convicted either before or after the conviction of the principal. Until the passage of this act, in 1842, proceedings in this State against the accessory were governed by the rules of the old common law, as modified by the statute of Anne. The accessory could be tried with the principal upon the same indictment, or by a separate trial upon the same or another indictment, after the conviction of the principal. *Commonwealth* v. *Andrews*, 3 Mass. 126; *Commonwealth* v. *Phillips*, 16 Mass. 423; *Commonwealth* v. *Knapp*, 10 Pick. 484; *State* v. *Butler*, 17 Vt. 145; *United States* v. *Burr*, 4 Cranch 502, 503. If tried separately he could be convicted only upon proof of the prior conviction of the principal. The death or escape of the principal consequently gave complete immunity to the accessory. It thus resulted that the accessory before the fact, always equally guilty

with the actual perpetrator of the crime, and often in fact the chief felon, as the originator of it, was not unfrequently left to go free, merely because his subordinate in guilt, for some reason entirely personal to himself, could not be tried. It is clear that the enactment was made to remedy this mischief, and that the statute is not aimed at those proceedings in which the principal and accessory are tried together. The provision that the accessory may be tried either before or after the conviction of the principal, obviously implies that the trial to which reference is had is one in which the accessory is tried separately from the principal. The act is to be construed in reference to the then existing state of the law, which was that the accessory could be tried with the principal; or, if separately, only when the principal had been convicted. The act declares that he may be tried before as well as after the conviction, but nothing in it indicates the intention to prohibit a trial with him, as before. It does not contain negative words, denying the trial in any case, nor does it purport to cover the whole ground of proceedings against accessories. It must be held to leave the common law untouched in all respects, except that in which it gives the right to try the accessory in a case where before it did not exist, namely: where the principal has not been convicted, and the trial is proceeding separately against the accessory.

The motion in arrest of judgment is denied. Confessions, to be received in evidence against the prisoner, must be voluntary. If obtained by the influence of hope or fear, applied by another to his mind, they must be rejected. In 1 Greenl. Ev., sec. 219, the rule of law on this subject is laid down as demanding only that the confession shall have been made voluntarily, and without the appliances of hope or fear by any other person; and in applying the rule it is there said the matter rests wholly in the discretion of the judge, upon all the circumstances of the case; the proof of the confession being admitted to the

jury or rejected, as he may or may not find it to have been drawn from the prisoner by the application of those motives. Various cases are cited in sec. 220 in illustration of these views. In all of them the rule is recognized, that if inducements to confess are held out by the prosecutor; by his wife, the prisoner being her servant; by the magistrate acting in the case ; by the officer having the prisoner in custody; indeed, by any one having authority over him, or over the prosecution, or by a private person in the presence of one having such authority, the confession will not be deemed voluntary, and will be rejected. Nor is it necessary, in order to render the confession inadmissible, that the inducement held out to make it should be in the form of a distinct promise of some specific advantage or favor. It is enough if, in general terms, it suggests an advantage to be gained by the confession. In 2 East's Pl. of the Crown 659, it is said: "As to what shall be considered as a threat or promise, saying to the prisoner that it will be worse for him if he does not confess, or that it will be better for him if he does, is sufficient to exclude the confession, according to constant experience;" and the cases, with almost entire uniformity, sustain this as the rule, when the threat, or promise, or encouragement of favor, comes from one having authority over the prisoner or the prosecution. Thus in *Kingston's Case*, 4 Carr & Paine 387, the inducement held out consisted merely in saying to the prisoner, " you had better tell all you know." In *Walkley's Case*, 6 C. & P. 175, the words were, " it would have been better if you had told at first;" in *Mills' Case*, 6 Carr & P. 146, " it is of no use for you to deny it, for there are the man and boy who saw you do it;" in *Cass' Case*, 1 Leach 293, " if you will tell me where the property is, I will be favorable to you," said by the prosecutor. In *Drew's Case*, 8 C. & P. 140, the magistrate's clerk told the prisoner to say " nothing to prejudice himself, as what he said would be taken down and used for him

or against him at the trial." In all these cases the inducements held out were adjudged sufficient to exclude the testimony. In *State* v. *Phelps*, 11 Vt. 116, it is laid down that any threat, promise, or encouragement of any hope of favor, held out as an inducement to confess, is sufficient to exclude it. In *State* v. *Grant*, 22 Me. 171, the rule laid down is, that there must appear to have been held out some fear of personal injury or hope of personal benefit of a temporal nature. To this effect is the whole current of the authorities. No case, it is believed, contravenes the doctrine that when the inducement presented to the mind of the prisoner, by one having authority over him or the prosecution, is held to operate as a threat or promise of temporal evil or benefit, in reference to the escape of the prisoner from the charge brought against him, and the effect of which is not considered to have been removed by after proceedings, the confession made under such inducement must be rejected. The doubt often arises whether the inducement is in the nature of a threat or promise, or whether it can be held to be one in reference to the particular charge to which the prisoner is subjected, or in relation to some other matter, or whether the effect of the inducement, if held to be a threat or promise, was removed before the confession was made. In numerous cases the confession has been held admissible upon some one or other of these and similar grounds. Many authorities of this character are collected in Roscoe, from page 41 to 46. Though the question of the admissibility of the confession is one addressed to the discretion of the court, to be decided upon a view of the circumstances of the case, as the judge may or may not find that the confession was drawn from the prisoner by the inducement presented, still, if the inducement is held out in such terms that in their natural import they encouraged him to expect or hope for an advantage to be gained from the confession, and the confession follows the inducement, it must be

understood that his mind was influenced by the hope of advantage suggested, to make it, unless circumstances appear to show that such was not the fact. Now in this case the officer having the prisoner in his custody under arrest, advised her, if she set the building on fire, that she had better own it. This must be held to have operated on her mind as a promise of or encouragement to hope for favor. It could not fail to suggest the thought that she might gain an advantage by confession which might be lost by silence. There is nothing in the case to lead to the belief that it did not have its natural effect upon her mind. On the other hand, the fact that she at first hesitated, expressed a doubt whether it would do for her to own it, but very soon proceeded to make the confession, clearly show that after deliberating upon the inducement held out, other prudential considerations gave way to this appeal to her hopes. The amount of influence exerted is not to be nicely weighed. It is enough if it was felt. Public policy forbids that confessions should be used in evidence against the prisoner which are drawn from him by appliances of this nature, brought to bear upon his mind by those who have authority over him, and when it may be supposed his mental agitation unfits him to resist their influence, however slight that may be. The testimony of Clifford, as to the confession of York, was improperly admitted, and for this cause the verdict must be set aside and

*A new trial granted.*