205 So.2d 579

**Eugene WOMACK**

**v.**

**STATE of Alabama.**

**7 Div. 768.**

Supreme Court of Alabama.

Dec. 21, 1967.

Gary F. Burns and J. Richard Carr, and A. L. Shumaker, Centre, for appellant.

MacDonald Gallion, Atty. Gen., and John A. Lockett, Jr., Asst. Atty. Gen., for the State.

COLEMAN, Justice.

Defendant appeals from a judgment of conviction for first degree murder and life imprisonment.

Defendant, with two companions, drove an automobile to the home of deceased in a rural area. One of defendant's companions shot deceased with his own shotgun and all three then proceeded to ransack the premises. The body of deceased was found several days later on the ground near a pile of slabs. Some of the facts are set out in more detail in opinions affirming the convictions of defendant's companions in Beverly v. State, 281 Ala. 325, 202 So.2d 534, and Elrod v. State, 281 Ala. 331, 202 So.2d 539.

Defendant assigns for error the action of the court in admitting into evidence over defendant's objection a gruesome, grisly photograph of the body of deceased lying on the ground where it was found. Defendant says that the picture shows nothing which was in dispute or material to any issue in the case and "that the only possible reason for introducing this picture into evidence is to inflame the minds of the jury to the extent that they will blindly find the defendant guilty of murder."

Whether defendant's argument have merit or not, this court, in the two has cases last cited, held that a substantially identical photograph was admitted without error and we are not disposed to change that ruling in the instant case.

Defendant contends that the court erred in admitting into evidence State's Exhibits 4 and 6 which are search warrants ordering the Sheriff of Etowah County to search the premises of defendant for articles described in the warrants.

Defendant contends that the court erred in admitting the warrants into evidence over defendant's objection because the warrants are "invalid" for two reasons.

First, defendant says the warrants are invalid because the officers who applied for the warrants testified that they obtained the warrants from the Clerk of the Circuit Court of Etowah County. Defendant says that the Clerk of the Circuit Court is not authorized by law to issue search warrants.

It is true that the officers did testify that they obtained the warrants from "Howard Kirby, Circuit Clerk of Etowah County." The warrants, however, are not signed by Howard Kirby as Clerk of the Circuit Court. Underneath his signature appear the following printed words:

"CLERK, ETOWAH COUNTY COURT."

The Etowah County Court was created by Act No. 91, Acts of 1963, Vol. 1, page 475, which recites in part:

"Section 4. The circuit clerk of Etowah County, Alabama, shall be ex officio clerk of the Etowah County Court, and all duties performed by or required of the said clerk shall be by virtue of his being clerk of the circuit court. The clerk shall issue processes of the court, keep a docket of the proceedings of the court, both civil and criminal, certify all appeals and certioraries. He shall have the power and authority to take affidavits and issue search warrants and warrants of arrest thereon, making same returnable to the court hereby established . . . ."

It thus appears that, although the person who issued the warrants was clerk of the circuit court, he did not issue them in that capacity but issued them as Clerk of the Etowah County Court who is expressly authorized by law to issue search warrants. Defendant's first objection to the validity of the warrants is not well taken. We do not undertake to decide whether a clerk of the circuit court has authority to issue a search warrant.

Second, defendant argues that the warrants are invalid because the jurisdiction of the Etowah County Court " . . . . is limited to felonies committed within the county and that in order to secure a search warrant in this case, resort should have been had to a court of general jurisdiction and not to one purely local in nature."

Section 1 of Act No. 91, supra, confers jurisdiction on the Etowah County Court as follows:

"Section 1. There is hereby created and established in Etowah County a court with county-wide jurisdiction as hereinafter provided. The court shall be known as the Etowah County Court. It shall have original jurisdiction of misdemeanors committed in the county, of bastardy and peace proceedings arising in the county and preliminary jurisdiction of all felonies committed in the county. . . . . The Etowah County Court is vested with the same powers, authority and jurisdiction now held or exercised under general or local law by the county court of Etowah County, the juvenile court, justices of the peace or courts created in lieu thereof, or the circuit court in those matters in which jurisdiction has been hereinabove conferred on the Etowah County Court."

Defendant's argument seems to be that, because the jurisdiction of the Etowah County Court does not include crimes committed outside the county, Act No. 91 ought not to be construed to confer on an officer of that court authority to issue a search warrant in connection with a crime which was not committed in the county.

The following has been written concerning search warrants:

"Search warrants are criminal processes, issued under the police power of the state, to aid in the detection or suppression of crime, and have no relation to civil process or trials. Den ex dem. Murray v. Hoboken Land and Imp. Company, 18 How. 272, 15 L.Ed. 372; State v. Derry, 171 Ind. 18, 85 N.E. 765, 131 Am.St.Rep. 237. They are, therefore, collateral to criminal prosecutions, although no direct criminal charge may ever in fact be brought against the party in whose possession the personal property may be found. The primary purpose of the search is to obtain evidence to be used in a criminal prosecution to maintain the peace and dignity of the state. Chipman v. Bates, 15 Vt. 51, 14 Am.Dec. 663." Sugar Valley Land Co. v. Johnson, 17 Ala.App. 409, 412, 85 So. 871.

■ Because the issuance of a search warrant is not in itself the commencement of a criminal action and may or may not be followed by a criminal action, we do not think that the authority to issue the warrant is limited to officers of those courts which have original or preliminary jurisdiction of criminal actions which may arise out of or in connection with the execution of the warrant.

So far as we are advised, this court has not determined or considered the limits of the territory within which an officer issuing a search warrant may authorize a search. General statutes regulating issue of search warrants appear in Title 15, §§ 99–118. In § 104, it is provided that the magistrate, on proper showing, must issue a search warrant " . . . . directed to the sheriff, or to any constable *of the county* . . . . " Statutes prescribe forms for search warrants. In § 105 of Title 15, the warrant is directed: "To the sheriff or any constable of ——————— county." In § 496, Title 13, Form 19, the warrant is directed: "To any lawful officer of said county."

By virtue of a statute providing that the jurisdiction of every justice of the peace shall be coextensive with his county and that he may issue process in matters within his jurisdiction, to be executed in any part of the county, the Supreme Court of Mississippi held that it was lawful for the justice to issue a search warrant to be served in and returnable before a justice of the peace in another district in the same county. Goffredo v. State, 145 Miss. 66, 111 So. 131.

■ Section 1 of Act No. 91, supra, expressly gives to the Etowah County Court "county-wide jurisdiction as hereinafter provided." We are of opinion that, when probable cause is adequately shown, Act No. 91 authorizes the Clerk of the Etowah County Court to issue warrants authorizing a search at any correctly described place in Etowah County. We think the clerk may issue a warrant authorizing a search in Etowah County for stolen property, although the property may have been stolen outside of that county and may have been stolen in connection with the commission of a crime at a place outside Etowah County. It appears that the decisive requirement is not that the issuing magistrate have jurisdiction of the criminal action which may be brought against the defendant for a crime in connection with which the property was stolen, but that the magistrate must have jurisdiction of the place at which the search is directed to be made.

Defendant's second ground of objection to validity of the warrants is without merit.

■ Defendant argues that the court erred in admitting into evidence certain articles which were found and seized by officers during searches made in execution of the search warrants. Defendant says the articles thus obtained were not admissible because they were the fruit of a search that was illegal because the warrants were invalid. We have already said that the invalidity of the warrants has not been shown. We are also of opinion that, since the warrants are not shown to be invalid, the

searches under authority of the warrants have not been shown to be illegal and error in admitting the seized articles into evidence has not been shown.

The substantial question presented by this record is whether the court erred in admitting into evidence, over defendant's objection, a confession purportedly made by defendant.

As already stated, two search warrants were issued in this case. State's Exhibit 4 is a search warrant dated August 24, 1966. The sheriff's return on Exhibit 4 bears the same date. Deputy Sheriff Duke testified that he obtained the warrant on the day of its date and went to defendant's house about 3 p. m. that day in company with another deputy, Sheriff Garrett, and a State Investigator; that defendant was not at home when they arrived but came home twenty or thirty minutes later; that he, Duke, showed the warrant to defendant's wife, told her he had a search warrant, and handed it to her; that she did not read it but told the witness to go ahead; that the officers were in the process of searching when defendant came home; that the witness handed the warrant to defendant but he did not examine it; that defendant did not have time to read the warrant before he made the statement, " 'All right' "; that one of the officers found in defendant's house a box containing three watches and a compass. Lyndon Bell, son of deceased, testified to effect that the watches were the property of his father. We do not understand that defendant was arrested or made any incriminating statement on August 24.

The other search warrant, State's Exhibit 6, is dated August 27, 1966, and the sheriff's return on the warrant bears the same date. Sheriff Garrett testified that he obtained the warrant and searched defendant's premises on August 27; that defendant was not at home when the witness first got there; that the witness had also a warrant for defendant's arrest; that the witness showed defendant the search warrant; that witness and the other officers with him waited something like an hour before defendant arrived.

State Investigator Combs testified that on August 27, 1966, he interrogated defendant about the death of deceased; that, prior to questioning defendant, the witness told defendant that he was charged with murder in the first degree in Cherokee County; that witness made no threats towards defendant and made no offer of reward or immunity to get defendant to make a statement; and that the witness read to defendant a paper denominated: "WAIVER OF COUNSEL BY DEFENDANT IN CUSTODY." This paper appears to be a duplicate of the similar paper signed by defendants in *Beverly* and *Elrod*, supra. On this paper, below the signature of defendant appears a statement signed by the witness, Combs, and Sheriff Garrett. The statement signed by the witness and the sheriff is to effect that all the rights of defendant set out above were read and explained to defendant, that no threats, promises, tricks or persuasion were used to induce defendant to waive his rights to an attorney and "make a statement without an attorney." The concluding sentence is that:

"He freely and voluntarily signed the above Waiver of Counsel in my presence after having read it."

On voir dire examination, Combs testified as follows:

"Q. Did you read this to him?

"A. Yes, sir.

"Q. Did Mr. Womack read it?

"A. No, sir, I don't think he did.

"Q. What time of day was it, do you recall?

"A. Approximately 5:00 P.M., somewhere around that.

" . . . . . . . . . .

"Q. Did Mr. Womack read this statement, the waiver?

"A. No, sir."

As we understand the testimony, the witness Combs read the waiver to defendant immediately on his arrival at his home, August 27, and, although Combs and the sheriff signed the statement reciting that defendant signed the waiver "after having read it," defendant never read the waiver.

We think there is little doubt that the waiver and confession were signed by defendant on August 27, but the waiver and confession are both dated August 28. The appearance of the numerals "28" suggests that they were originally written "28" and later an attempt was made to change the "8" to a "7," or vice versa.

Combs testified that on August 27, he, "Sheriff Garrett, and Solicitor Latham" were present in the sheriff's car when Combs talked to defendant; that defendant changed his clothes before the officers started talking to defendant; that defendant first made an oral statement and two or three hours later made an oral statement which Combs took down in writing; and that during the interval the officers and defendant were riding around to pick up certain items taken from the house of deceased.

The evidence, preliminary to introduction of the confession into evidence, justifies a finding that, before defendant confessed, he was told that he was charged with murder and that the so-called waiver was read to and signed by defendant. Whether defendant understood all the statements in the waiver may be questionable, but the words were read to him. Defendant testified that he " . . . . really didn't understand it. I was all shook up."

The evidence supports a finding by the trial court that defendant was told that he could remain silent and had a right to counsel and that the court would appoint an attorney if defendant was unable to employ one.

There is no evidence of violence or threats of violence being made toward defendant.

There is, however, a question presented by the evidence as to whether any inducement or promise was made by the sheriff sufficient to render the confession involuntary and, therefore, inadmissible. The evidence shows that during the interrogation, Sheriff Garrett made statements to defendant to effect that it would go lighter on defendant if he would make a statement or tell the truth.

Combs testified that Sheriff Garrett "could have" made a statement to defendant.

Sheriff Garrett testified as follows:

"Q. Did you tell him, 'It will go lighter on you if you make a statement'?

"A. I could have.

"Q. While Mr. Combs and you were there with him you were talking to the defendant now and then?

"A. I put in a word or so.

"Q. You could have made that statement?

"A. I wouldn't say I did, and I wouldn't say I didn't.

"Q. Sheriff, how long did you have the defendant in custody before you actually took the statement?

"A. Three or four hours.

"Q. What time did you arrest him?

"A. It was that afternoon about 4:00 or 4:20.

"Q. It was after dark before you got to the Cherokee County Jail, and that is when you took the statement?

"A. Yes, sir.

"Q. After you got to jail you made that statement to him?

"A. I told you I didn't know if I did or not make the statement."

Defendant testified:

"Q. Did Mr. Garrett say a word every once in a while during the reading of the paper?

"A. He said it would go lighter on me if I did talk.

"Q. Did Mr. Combs say that?

"A. Mr. Garrett said it would go lighter on me if I told the truth.

"Q. Mr. Combs didn't say that, but Mr. Garrett did?

"A. Yes, sir.

"Q. Did he make that statement to you any other time?

"A. He did that night over in the livingroom, I reckon it was the livingroom.

"Q. When they were taking the statement from you?

"A. Yes, sir."

". . . . . . . .

"Q. You told them that you would go with them and help them get the violins?

"A. After they persuaded me, after Mr. Garrett told me they would go light on me.

". . . . . . . .

"Q. What did Sheriff Garrett tell you?

"A. He said, 'Gene, you are into it now. If you will go ahead and tell the truth, it will go lighter on you all.'

". . . . . . . . .

"Q. Did they promise you if you would talk, they would help you.

"A. Sheriff said it would go lighter on me.

"Q. Sheriff Garrett said that it would go lighter if you told them about it?

"A. Yes, sir, he sure did."

Investigator Combs testified with respect to the written confession as follows:

"Q. All of this statement is in Mr. Womack's words?

"A. To the best that I could take it, yes, sir.

"Q. What part did you tell him to put in there?

"A. What part did I tell him to put in? I didn't tell him to put any part in there.

"Q. Did you suggest any part?

"A. No, sir, I didn't suggest putting any part in.

"Q. What about this first paragraph where it says he had been read and advised of his rights?

"A. I put that in myself.

"Q. Mr. Womack didn't tell you that?

"A. No, sir.

"Q. What about this where it says it had been read to him?

"A. I put that part in.

"Q. What date have you got on here? It looks like an 8 to me?

"A. Twenty-seventh.

"Q. When did you put that date on there?

"A. On the twenty-seventh of August. At the time I put the 28th, and I realized it was the 27th, and I put the 27th on there.

"Q. Did you read the waiver to him before you started taking the statement?

"A. I read it to him at his house.

"Q. Not at the time you took the statement?

"A. No, sir.

"Q. Did anyone in your presence read it to him?

"A. No, sir.

"Q. It wasn't read to him?

"A. Not at the time the written statement was taken, no, sir.

"Q. Did the defendant read this statement, the Waiver of Counsel?

"A. I don't think he did.

"Q. Did you state in the statement that he read it?

"A. I believe it is in the statement, yes, sir.

"Q. He didn't read it?

"A. No, sir.

"Q. Did he read the written statement before it was read to him?

"A. He didn't read it, no, sir."

■ The confession, to be receivable in evidence, must be purely voluntary. Lacey v. State, 58 Ala. 385, 386.

■■ The settled rule of this court is, that all extra-judicial confessions are *prima facie* involuntary, and they can be rendered admissible only by showing that they are voluntary and not constrained—or, in other words, free from the influence of *fear* or *hope*, applied to the prisoner's mind by a third person. The true test is whether, under all the surrounding circumstances, they have been induced by a threat or a promise, express or implied, operating to produce in the mind of the prisoner apprehension of harm or hope of favor. If so, whether true or false, such confessions must be excluded from the consideration of the jury as having been procured by undue influence. Redd v. State, 69 Ala. 255, 259.

■ The rule is clearly settled in Alabama, as elsewhere, that confessions cannot be given in evidence against a person charged with crime, until they are first shown to the satisfaction of the court to have been voluntarily made. Any, the slightest menace or threat, or any hope engendered or encouraged that the prisoner's case will be lightened, meliorated, or more favorably dealt with if he will confess; either of these is enough to exclude the confession thereby superinduced. Any words spoken in the hearing of the prisoner which may, in their nature, generate such fear or hope render it not only proper but necessary that confessions made within a reasonable time afterwards shall be excluded, unless it is shown by clear and full proof that the confession was voluntarily made after all trace of hope or fear had been fully withdrawn or explained away and the mind of the prisoner made as free from bias and intimidation as if no attempt had ever been made to obtain such confessions. Owen v. State, 78 Ala. 425, 428.

In Aaron v. State, 37 Ala. 106, 108, 109, this court considered and held admissible a confession obtained from defendant under circumstances described as follows:

" . . . . He was left, during the night, in the custody of one Nelson, who was acting as constable, and who kept him bound with handcuffs and a chain. On the next morning, while Nelson, accompanied by several other persons, was carrying him to the place appointed by the magistrate for the further investigation, and while he and Nelson were twenty or thirty yards in advance of the rest of the party, he made a confession of his guilt; and immediately afterwards, while the whole party were going down the river in a boat, repeated the confession in the presence of the other persons. . . . . The prisoner then introduced Nelson as a witness, who testified to the court, in reference to the confession made to him, as follows: 'While he and Aaron were about twenty-five or thirty yards in advance of the others, and were in conversation about the matter of the homicide, witness said to Aaron in substance, as well as he

could recollect, "If you did it, you had better confess: it is best to tell the truth; but, if you did not do it, we don't want you to say so." On re-examination touching this conversation, the witness stated that he said to the prisoner, "If you killed him, you had better confess; it would be best for you to tell the truth; truth is always the best policy. But, if you did not kill him, we don't want you to say so; if you did, it is best for you to confess and acknowledge it." When witness made these statements to Aaron in said conversation, Aaron walked on a little way, saying nothing, and apparently reflecting, and then made the confession. No one else was then present, but the others soon came up.' . . . . "

In Edwardson v. State, 255 Ala. 246, 250, 251, 51 So.2d 233, this court quoted with approval from Kelly v. State, 72 Ala. 244, 245–246, as follows:

" 'The confession made by the prisoner to the witnesses Cornutt and Lawler, should, in our opinion, have been excluded as evidence. True, it is stated by these witnesses, that they made no threats, or promises, by which to educe such confessions. This, however, is but the statement of a mere opinion, and not of a fact, as the evidence imports otherwise. The witness Lawler testifies as follows: "I said to him (defendant), *'You have got your foot in it, and somebody else was with you. Now, if you did break open the door, the best thing you can do is to tell all about it, and to tell who was with you, and to tell the truth, the whole truth, and nothing but the truth.'* I wanted to produce the impression on his mind, that it *was best for him to tell us about it* [and] I *did produce that impression* before he would tell me." This was said in presence of the witness Cornutt, who, as constable, held the defendant under arrest at the time.

" 'It is no doubt the sounder doctrine, that a mere adjuration to *speak the truth,*

addressed to a prisoner, will not authorize a confession induced by it to be excluded, where no threats or promises are applied. —Whart.Cr.Ev. §§ 647, 652, 654; Aaron v. State, 37 Ala. 106. Nor can a promise, or inducement, be implied from the exhortation that it is *best* or *better to tell the truth,* it having been frequently so adjudged.—King v. State, 40 Ala. 314; Aaron's case, 37 Ala. 106; Whart.Cr.Ev. § 647; 2 Lead.Cr.Cases, 189. But the rule is otherwise, where the party has been told, by a person in authority, that it is better for him to confess, or that he will be bettered by saying a particular thing.—I Phil.Ev.4th Amer.Ed. 542–3; Whart.Cr.Ev. §§ 651, 654; 1 Whart. Amer.L. § 686.

" 'The exhortation to the prisoner did not stop with adjuring him to tell the truth, or only with telling him that the best thing he could do was to tell all about it, in the event he was guilty of the breaking. It goes further, by assuming his guilt, and by assuming also that the prisoner was accompanied by one or more accomplices; and he is told, in effect, that it would be best for him to tell all about these assumed facts. The manifest impression produced on the prisoner's mind must have been, that he would, in some unknown manner, fare better by confessing his guilt of the crime of burglary; and this inducement vitiates any confession evoked under its influence. Whart.Ev. § 651; State v. York, 37 N.H. 175; Vaughan v. Commonwealth, 17 Grat. 576; Clark's Man. Cr.L. § 2948.

" 'If we are to understand from the bill of exceptions, that the confessions testified to by the witness Lawler, in detail of the alleged burglary, followed the above inducement, or were elicited by it, as we think is its correct construction, these confessions were improperly admitted to go before the jury.' "

In Lacey v. State, 58 Ala. 385, defendant was convicted for larceny of a chair. The

owner testified that he had conversation with defendant in which the owner said to defendant, "you had better return the chair," and defendant replied "that he would." The owner stated that he offered no inducement of promises or threats to defendant and that all that passed was as above stated, which was before any prosecution had been commenced against defendant. This court said the confession "was not what the law calls voluntary, and therefore should not have been received."

In Redd v. State, 69 Ala. 255, defendant was in jail charged with murder. Defendant was advised that a mob was gathering for the purpose of rescuing him from the jail. He knew that a guard of eight or ten persons had been summoned to protect him. To the question, "whether he was afraid of a mob," defendant had replied in the negative. The sheriff, in presence of a half dozen of the guards, informed defendant that he was in a "bad fix," and, in reply to a question put by defendant, told defendant that sometimes, in cases of assault and battery and similar cases, it was best to plead guilty. Thereupon followed the confessions which this court held were obtained "under the combined influence of both *hope* and *fear,* and were improperly admitted"; for which error the judgment was reversed.

In Banks v. State, 84 Ala. 430, 4 So. 382, a burglary case, one of the arresting party told defendant that "it would be best for him to tell all about it." Defendant thereafter conducted witness to an old field where stolen goods were found and, after discovery of the goods, defendant told witness that "we (defendant and another) broke open the store door with a crowbar, which we got at the (railroad) transfer yard." This court held that the offer of defendant to conduct the parties to place where the stolen goods were concealed and the discovery of the goods were admissible, but the confession, made after finding the goods, while defendant was still under arrest, to the same parties who had given

the previous assurance of hope, should have been excluded and reversed the judgment.

In Gregg v. State, 106 Ala. 44, 17 So. 321, a conviction for infanticide, the witness said to defendant: "Tell us the truth about it all, and that will be the last of it." Defendant confessed. This court said: "Here was inducement, advantage held out to her by these persons, to make this confession. It was patently inadmissible, and the objection interposed to it, should have been sustained."

The case we have found most closely like the instant case is Turner v. State, 203 Ga. 770, 48 S.E.2d 522, 523, decided in 1948. In an opinion written by Duckworth, Presiding Judge, later Chief Justice, the Supreme Court of Georgia said:

"While the plain provisions of the Code, § 38–412, forbid a ruling that to be admissible a confession must be spontaneous, as was said in King v. State, supra (155 Ga. 707, 118 S.E. 368), the provisions of § 38–411 require the exclusion from evidence of any confession that is induced by another by the slightest hope that the confession would make his punishment lighter. Accordingly, the confession or incriminatory statement in the present case, in which the accused was convicted of murder with a recommendation of mercy, was inadmissible, inasmuch as it is shown by the record that the sheriff, to whom it was made and who had arrested the accused, testified that 'All I told him was if he would tell the truth it would be lighter on him,' and the confession or incriminatory statement followed that statement of the sheriff. Such a statement by the arresting officer was improper and no doubt gave the accused, not merely the 'slightest hope,' but a real hope for lighter punishment. The court erred in admitting the alleged confession or incriminatory statement of the accused over objection." (203 Ga. at page 771, 48 S.E.2d at page 523)

In the instant case, the sheriff did not deny that he told defendant "It will go lighter on you if you make a statement." On the contrary, the sheriff frankly admitted, "I could have." On this record, the conclusion seems inescapable that such a statement was made to defendant by the sheriff during defendant's interrogation which resulted in the confession. As the Georgia court said, such a statement gave defendant "a real hope for lighter punishment."

Under the principles stated above, the confession was not shown to be voluntary and its admission over objection was error for which the judgment must be reversed.

Reversed and remanded.

LAWSON, GOODWYN, and HARWOOD, JJ., concur.