The issue in this case is whether the defendant's confession was voluntary, in light of certain statements made by the sheriff.
David Michael Carden was arrested for capital murder; see § 13A-5-40(a)(2), Ala. Code 1975. Carden filed a motion to suppress his confession, alleging that it had been coerced. The trial court found the confession to be admissible and denied the motion to suppress. The Court of Criminal Appeals held that Carden's confession was coerced and, therefore, that the trial court erred in admitting it into evidence. 612 So.2d 504.
The facts are as follows: The victim, George Reaves, was found dead from multiple wounds to the head and face. The coroner determined that Reaves had been hit several times in the head with a blunt object. Reaves's wallet and his pistol were not in his pockets, as they usually were.
Preston Ansley was arrested, and he told the police that he and Carden had stopped at Reaves's house to borrow some money. Reaves was Carden's step-grandfather, and Carden had lived with Reaves when he was a child. Ansley stated that Carden struck Reaves in the head with a hammer several times and took Reaves's wallet and gun. Ansley said that Carden struck Reaves because Reaves had always been "mean as hell" to Carden.
The sheriff obtained a warrant to search Carden's mother's house for the gun taken from Reaves. The information obtained from Ansley indicated that the gun may have been placed inside the walls of Carden's mother's house as Carden had been repairing plaster on the walls of his mother's house Carden arrived at his mother's house while the sheriff was searching the house. He was arrested and was advised of his rights underMiranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966). Upon arriving at the jail, he was taken to an interrogation room by Deputy M.L. Kirby. Kirby advised Carden of his Miranda rights, explained the waiver of rights form to Carden, and asked him if he wanted to make a statement. Carden refused and requested an attorney.
When Kirby began to write "refused" on the waiver form, Carden stopped him and said that he wanted to make a statement. Immediately after Carden signed the waiver form, Sheriff Roy Snead asked him where the gun was located. Snead told Carden in substance:
 "You know we have a search warrant for your mother's place. . . . You know you might as well tell me where the weapon is because if you don't we're going to go back out and take the place apart until we find the weapon. . . . Why put your mother through more embarrassment and stuff like it is because we'll be there until we find it. We know it's in your house."
(R.T. 181.)
Carden then told Sheriff Snead that the gun was located underneath the house. Snead left to retrieve the gun. Again, Kirby advised Carden of his rights pursuant toMiranda. Kirby read the waiver form to Carden and the following conversation occurred:
 "Kirby: And the waiver of rights: 'I have read this waiver or I have read it to you, a statement of my rights, and I understand my rights — what my rights are.' Do you?
"Carden: Yes.
 "Kirby: 'I know — I understand and know what I am doing.' Do you?
"Carden: Yes, sir.
 "Kirby: 'No promises or threats have been made to me and no pressure or coercion of any type has been used against me.' Have they?
"Carden: Yes.
"Kirby: What have they . . . used?
 "Carden: Tearing out my mama's house and stuff like that.
"Kirby: They are?
"Carden: Yeah. Y'all said y'all would.
 "Kirby: We have a search warrant. We have to search your house.
"Carden: Not tear it apart. *Page 508 
 "Kirby: We have to use what force . . . may become necessary to search a house. We don't just literally tear people's houses up. We do it the best we possibly can. Do you understand that?
"Carden: Yes.
 "Kirby: That's what a search is. A search is you go to the — as far as you have to to look for whatever the search warrant is for. We don't just deliberately go tear up nobody's stuff. Do you understand your rights?
"Carden: Yeah.
"Kirby: Do you want to make a statement now?
"Carden: Yeah.
". . . .
 "Kirby: Did you first tell me that you didn't want to sign this waiver, that you wanted to talk to your lawyer?
"Carden: Yes.
 "Kirby: And while I was putting the refusal on this waiver did you stop me and tell me that you wanted to talk to us?
"Carden: Yes, sir.
 "Kirby: And you wanted to talk to us without a lawyer?
"Carden: Yes, sir.
 "Kirby: All right. And now is it clear to you your rights?
"Carden: Yes, sir."
(C.R. 135-A to 135-C.)
Carden gave a statement to Kirby confessing to killing Reaves after, he said, Reaves had pulled a gun on him and Ansley. The trial court denied the motion to suppress the confession and admitted the confession into evidence at trial.
The Court of Criminal Appeals held that the State failed to prove by clear and positive testimony that Carden's statement as to the location of the gun was voluntary. That court held that the disclosure of the location of the gun was the result of a threat or improper influence and was not the product of a rational intellect and a free will. The court held that because Carden's statement as to the location of the gun was involuntary, the court must look to the factors set forth inBrown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254,45 L.Ed.2d 416 (1975), to determine whether Carden's subsequent confession was "sufficiently attenuated" from the statement to be admissible. The three factors from Brown, supra, are: (1) the time elapsed between the threat and the confession; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the officer's misconduct. The Court of Criminal Appeals held that the confession was not sufficiently attenuated from the involuntary statement and that the trial court erred in admitting the confession into evidence.
The determination of the admissibility of a custodial confession involves a two-part analysis: (1) whetherMiranda warnings were given and (2) whether the confession was voluntarily given. Hutchinson v. State,516 So.2d 889 (Ala.Crim.App. 1987).
The State has the burden of proving that the defendant's confession was voluntary. Whether a confession is voluntary is determined by an examination of the totality of the circumstances surrounding the giving of the confession.Baker v. State, 557 So.2d 851 (Ala.Crim.App. 1990).
 "The settled rule of this Court is, that all extrajudicial confessions are prima facie involuntary, and they can be rendered admissible only by showing that they are voluntary and not constrained — or, in other words, free from the influence of fear or hope applied to the prisoner's mind by a third person. The true test is whether, under all the surrounding circumstances, they have been induced by a threat or a promise, express or implied, operating to produce in the mind of the prisoner apprehension of harm or hope of favor. If so, whether true or false, such confessions must be excluded from the consideration of the jury as having been procured by undue influence."
Womack v. State, 281 Ala. 499, 507, 205 So.2d 579, 586
(1967).
In Womack, the sheriff stated that "it will go lighter on you if you make a statement." 281 Ala. at 506,205 So.2d at 585. This Court held that the sheriff's statement gave Womack a real "hope for lighter punishment," and it reversed his conviction on *Page 509 
the basis that the confession was coerced by the sheriff's statement. In Ex parte Weeks, 531 So.2d 643 (Ala.), cert. denied, 488 U.S. 851, 109 S.Ct. 135, 102 L.Ed.2d 108
(1988), a sheriff's investigator told Weeks that he would speak to the district attorney on Weeks's behalf if Weeks would confess to participating in the burglary. We held that an express promise such as that necessarily engendered the hope of favor in Weeks's mind and, therefore, that the subsequent confession was involuntary.
In the present case, we cannot say, based on a "totality of the circumstances," that the confession was involuntary. The sheriff already had a search warrant for Carden's mother's house and was in the process of searching for Reaves's gun when Carden told him the exact location of the gun and subsequently confessed to the murder. Carden knew that the sheriff was searching his mother's house, because the sheriff was searching the house when Carden was arrested. Carden testified at the suppression hearing that he was afraid of Ansley, his co-defendant, and that he was scared of the amount of information that he believed the sheriff knew. Also, in Carden's conversation with Deputy Kirby, Kirby explained to Carden that the sheriff would not literally or deliberately tear his mother's house apart. Kirby then explained the search warrant process to Carden. Carden indicated that he understood his rights and that he wanted to make a statement.
Based on the circumstances surrounding the confession, we hold that the confession was voluntary and that the trial court correctly denied the motion to suppress it. Therefore, we reverse the judgment and remand this case to the Court of Criminal Appeals for proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, SHORES, HOUSTON, STEAGALL and KENNEDY, JJ., concur.