The appellant was indicted for the offense of buying, receiving, or concealing stolen property, a Lincoln Mark IV automobile, under Section 13-3-55, Code of Alabama 1975. A jury found him guilty and fixed the value of the automobile at $6,500.00. The trial judge set sentence at eight years' imprisonment.
The only question presented on appeal concerns the admissibility of a confession made by the appellant after his indictment and in the absence of counsel.
On September the 14th and 15th, 1976, the appellant gave Officer Robert L. Wilemon, Alabama Department of Public Safety, Auto Theft Unit, a statement concerning his connection with the Lincoln automobile. On appeal no question is raised challenging the voluntariness of this statement and this court has no difficulty in determining that it was properly admitted into evidence.
The appellant was indicted by the grand jury of Jefferson County on November 5, 1976, and served with a copy of that indictment on December 22nd of that same year. Some time after this the appellant was incarcerated in the Marshall County Jail on three other charges of buying, receiving, or concealing. On January 27, 1977, Officer Wilemon took a statement from the appellant in the county jail. It is this statement with which we are concerned.
During the interview the appellant's attorney, the Honorable R.B. Jones of Birmingham, Alabama, was not present although he knew that Wilemon was going to question his client. From the record:
 "Q. Did you (Wilemon) tell Mr. Jones that you were going to talk to the defendant? *Page 857 
 "A. That was the reason that he was up there. He came up there to talk to the D.A. and also to Mr. Eakes."
Officer Wilemon testified that the appellant was advised of his Miranda rights and did sign a waiver of rights form before any questioning began; that neither he, anyone in his presence, nor anyone he knew about, offered the appellant any promise or hope of reward, renumeration, or inducement of any kind in order to get him to make a statement but that "we always tell them it would be better for them to make a statement but there were no threats made to him whatsoever". The appellant was told that he would not be prosecuted for any other cases which were not then pending against him.
 "A. (Wilemon): The only thing that we told him on January 27th was any additional cars that he furnished us, he would not be charged with but that was excluding any charges that was against him, that he would have to face those charges."
* * * * * *
 "Q. Those charged. Do you mean and say that? Did you tell him this case he was charged with here in Birmingham?
 "A. Yes, sir, that is what I was concerned with, the one I had Mr. Eakes charged with."
When the appellant talked with Officer Wilemon he had already talked with his attorney.
On cross examination of Officer Wilemon, defense attorney Jones established that Sergeant Barnett, Department of Public Safety, Auto Theft Unit, Wilemon, and Jones had a conversation before the appellant made his statement.
 "Q. And I believe you understood that Mr. Eakes was going to cooperate with you all in finding or locating, say, some sixteen or seventeen more cars?
"A. That was our understanding, yes sir."
* * * * * *
 "Q. But before the interview I had talked to you and Sgt. Barnett and told you that the defendant was going to cooperate with you all?
"A. Yes, sir.
 "Q. And I had also told you that I had discussed this case with the D.A.?
"A. Yes, sir."
After the interview with the officers, the appellant was released from jail.
Deputy District Attorney Pete Johnson made a "statement for the record" and was examined by defense counsel. Johnson stated that John Starnes, the District Attorney of Marshall County, told him over the telephone that:
 "He informed me that no promise was made whatsoever, any affecting a case. The only promise made to this defendant by him was that he would reduce — recommend that the amount of bond be reduced, which was done, and that was the only thing ever in the form of a promise made by Mr. Starnes.
 "And that the defendant indicated to him that he wanted to make a statement. He then called Mr. Jones. Mr. Jones then came to Guntersville sometime later that day or the next day and that after Mr. Jones talked to the defendant, that he understood that the defendant later made a statement but that the defendant was not questioned until after Mr. Jones was brought up there, or came up."
* * * * * *
 "He told me that this defendant was made aware that the pending cases that had already been made on him, that they were still in effect and that nothing would be done in regard to them."
Johnson's testimony of what the district attorney had told him was admitted without objection by defense counsel.
On cross examination by Mr. Jones, Deputy District Attorney Johnson testified that Mr. Starnes informed him that bond was reduced and that the appellant got out on bond but that no other promise or consideration was extended to the appellant.
 "Q. (D)id you gather this from this telephone conversation that if the defendant would cooperate, that there would be *Page 858 
some consideration given to the defendant? Didn't you get that impression from him?
 "A. No, sir. He told me the only thing that he did and told the defendant that he would do, he would recommend that the bond be reduced. Of course, the judge would have to reduce it, but he would recommend that the bond be reduced. He told me that was the only promise that he made.
 "THE COURT: And that was done, right? Bond was reduced?
"A. I assume it was."
The appellant testified during the hearing on the motion to suppress that he was facing three charges of buying, receiving, and concealing stolen property with each case carrying a ten thousand dollar bond; that he called his attorney who came to the county jail in Guntersville and talked with him; that he expressed a desire to cooperate with Officers Barnett and Wilemon; that he discussed it with his attorney and that he talked to the district attorney who:
 "lowered my bond from ten thousand to two thousand. And he — Mr. Starnes talked like he wanted me to cooperate with them and it would be easier on me."
Under examination by his attorney the following testimony was adduced from the appellant.
 "Q. And you got out of jail as soon as you made this statement to them?
"A. Yes, sir.
 "Q. To Wilemon and Barnett? Then there was some consideration then or that things would go easier on you if you made this statement?
"A. Yes, sir."
* * * * * *
 "Q. They told you they couldn't specifically promise you anything on this case pending here?
"A. That's right."
* * * * * *
 "Q. Did you make a statement there to Sgt. Wilemon and Sgt. Barnett after your bond was lowered and after you talked to the district attorney?
"A. Right.
 "Q. Did they promise you there would be no more on cases made against you if you cooperated with them?
"A. Yes, sir."
Relying principally on Brewer v. Williams, 430 U.S. 387,97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), and Massiah v. UnitedStates, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), the appellant maintains that "there was trickery in slipping in a question about the car involved in Mr. Eakes' indictment along with questions about sixteen other cars that Mr. Eakes had agreed to talk freely about". This argument is predicated on the contention that the appellant, with the advice of counsel, agreed to discuss only the additional automobiles on which no charges had been or were to be made.
From the evidence it appears that when the appellant confessed he was facing three charges of buying, receiving, or concealing stolen property in Marshall County and one indictment for a similar offense in Jefferson County. The record affirmatively indicates that the subject of the Jefferson County indictment, the Lincoln automobile, was not the basis for any of the three charges in Marshall County.
 (From the cross examination of Officer Wilemon by Mr. Jones)
 "Q. And at the time that he made this statement, he was charged, I believe, in Marshall County. I don't know whether you know or not, were three or four other vehicles involved?
"A. Three or four cases. I'm not certain.
"Q. Three other vehicles, different vehicles?
"A. Yes, sir."
 I
A confession is presumed to be involuntary. Before its admission into evidence there must be evidence addressed to the trial judge sufficient to rebut that presumption and a showing that the confession was made without influence of either hope *Page 859 
or of fear, unless the attending circumstances affirmatively disclose the voluntariness of the confession. Wallace v. State,290 Ala. 201, 275 So.2d 634 (1973); Bush v. State, 282 Ala. 134, 209 So.2d 416 (1968). In order to be admissible a confession must be free and voluntary and cannot be the result of any direct or implied promises, however slight. Malloy v.Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964);Shotwell Mfg. Co. v. United States, 371 U.S. 341, 83 S.Ct. 448,9 L.Ed.2d 357 (1963); Bell v. Alabama, 5 Cir., 367 F.2d 243, cert. denied, 386 U.S. 916, 87 S.Ct. 859, 17 L.Ed.2d 788
(1966); Wallace, supra. The question of whether a confession was obtained by coercion or improper inducement can be determined only by examination of all the attendant circumstances. Boulden v. Holman, 394 U.S. 478, 89 S.Ct. 1138,22 L.Ed.2d 433 (1969); Wallace, supra. Each case must stand or fall on its own merits for the constitutional inquiry into the issue of voluntariness requires more than a mere "color-matching of cases". Beecher v. Alabama, 389 U.S. 35,88 S.Ct. 189, 191, 19 L.Ed.2d 35 (1967). The true test of determining whether extrajudicial confessions are voluntary is whether the defendant's will was overborne at the time he confessed and therefore not the product of a rational intellect and a free will. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745,9 L.Ed.2d 770 (1963); Elliott v. State, 338 So.2d 483
(Ala.Cr.App. 1976).
A confession may be inadmissible if induced by a promise to let the accused out on bail, to assist in providing bail, or by a promise to reduce bail. Machen v. State, 16 Ala. App. 170,76 So. 407 (1917).
Here there was no promise made or implied that the bail on the Jefferson County indictment, which was set at one thousand dollars, would be reduced if the appellant confessed. The promise of bail reduction had reference only to the three charges pending in Marshall County. The agreement not to prosecute the appellant for any additional cases specifically excluded the four cases then pending against him (the three cases in Marshall County and the one indictment in Jefferson).
On appeal, but not at trial, it is argued that the appellant agreed only to discuss the automobiles which were not the subject or basis for a pending charge. This contention is simply not supported by the record before this court. Nowhere in the testimony presented at the suppression hearing or at the trial on the merits have we found any evidence or testimony that the appellant agreed to talk only about those cases for which he had not been charged or indicted.
At trial the confession was objected to because
 "I (Jones) feel if Your Honor please, that there was some holdout of hope even though it is in the record that he (the appellant) was advised of his warnings and I think the January 27th statement should be excluded."
* * * * * *
 "Let me point out to the Court this: that he was and did receive consideration in Marshall County because his bond was reduced and he was released from jail and he did give the statement and I think he was promised some reward and I think that the January 27th statement should be excluded, if Your Honor please."
This case does not come within the guidelines of Massiah, supra or Williams, supra. There was no undercover agent or informer employed to obtain inculpatory statements. There is no evidence that the appellant ever expressed a desire not to talk or to discontinue questioning or that the police violated an agreement not to question him on a specific subject or charge. There is simply no evidence of trickery, deception, artifice, subterfuge, or underhanded or unfair law enforcement practices present in this case.
A promise or inducement for a confession cannot be implied from an exhortation to a prisoner that it is best or better to tell the truth. The rule is otherwise, where the party has been told by a person in authority that it is better for him to confess, or that he will be bettered by saying a particular thing. Edwardson v. State, *Page 860 255 Ala. 246, 251, 51 So.2d 233 (1951). Here the appellant was only told that it would "be better to make a statement". This was not tantamount to an urging to confess or to admit guilt. We consider this more consistent with a mere adjuration to tell the truth.
In the recent decision of Holt v. State, Ala., 372 So.2d 370
(1978), the Alabama Supreme Court effectively overruled Hunt v.State, 135 Ala. 1, 33 So. 329 (1902), and specifically rejected the collateral benefit rule which states that if a confession (or inculpatory admission) is induced by a promise of collateral benefit, with no assurance of benefit to the defendant in respect to the crime under inquiry, such a promise will not suffice to show that the confession was involuntary. Applying the law existing at the time of trial, the judge could properly have found that the confession was induced by the promise of a collateral benefit (the reduction of bond in the Marshall County cases) and was therefore admissible. This is now impermissible under the dictates of Holt, supra.
Therefore this case is remanded to the Circuit Court of Jefferson County for a hearing to determine the admissibility of the confession in light of the Holt decision. In this hearing the attention of the trial judge should be focused on the question of "whether the behavior of the state's law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not freely self-determined". Rogers v. Richmond, 365 U.S. 534,81 S.Ct. 735, 5 L.Ed.2d 760 (1961); Lynum v. Illinois, 372 U.S. 528,83 S.Ct. 917, 9 L.Ed.2d 922 (1963).
 "(A) confession, in order to be admissible, must be free and voluntary: that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence. . . . A confession can never be received in evidence where the prisoner has been influenced by any threat or promise; for the law cannot measure the force of the influence used, or decide upon its effect upon the mind of the prisoner, and therefore excludes the declaration if any degree of influence has been exerted." 3 Russell on Crimes (6th ed.) 478 quoted in Bram v. United States, 168 U.S. 532, 542, 18 S.Ct. 183, 42 L.Ed. 568 (1897).
However a confession is not rendered involuntary by a promise of benefit that was solicited freely and voluntarily by the accused. Taylor v. Commonwealth, 461 S.W.2d 920, (Ky. 1970), cert. denied, 404 U.S. 837, 92 S.Ct. 126, 30 L.Ed.2d 70 (1971).
 II
In conjunction with the confession, the appellant urges that, once a lawyer has entered in a criminal proceeding representing a defendant in connection with criminal charges under investigation, the defendant in custody may not waive his right to counsel in the absence of his lawyer and therefore any statement obtained after a purported waiver without the presence or assistance of counsel is inadmissible. This proposition was specifically rejected by this court in Thompsonv. State, 347 So.2d 1371 (Ala.Cr.App.), cert. denied,347 So.2d 1377 (Ala. 1977), and cases cited at 1375, 1376. See also Annotation, 90 A.L.R.2d 732 (1963). The fact that a defendant has an attorney does not mean, as a per se rule, that law enforcement officials may not question the defendant without prior notice to or consent from the attorney. Thompson, supra.
This cause is remanded for further proceedings as directed by this opinion and in accordance with the dictates of Holt.
REMANDED.
All Judges concur. *Page 861