We granted certiorari in this case to consider whether the petitioner's confession should have been suppressed.
The petition and the attached Rule 39(k), Ala.R.App.P., statement of facts indicate, and the record confirms, that the petitioner was convicted in the Circuit Court of Dallas County of robbing Martin's Mercantile in Plantersville, Alabama. The Court of Criminal Appeals affirmed the conviction, 511 So.2d 276, and, thereafter, overruled the petitioner's application for rehearing.
The following material facts are not in dispute: James Henderson, an investigator with the Chilton County Sheriff's Department, and Chief Deputy Benny Mims, also of the Chilton County Sheriff's Department, travelled to Flagstaff, Arizona, and questioned the petitioner about the robbery that had occurred at Martin's Mercantile. At the time he was questioned by Henderson and Mims, the petitioner was in custody and was charged only with escaping from the Chilton County Jail. The petitioner was advised of his Miranda rights before questioning began. The petitioner admitted that he had escaped from the Chilton County Jail, but denied any knowledge of the robbery. After the petitioner had been questioned "for some time," Mims asked him the following question: "[W]hat if I told you that we have [Paul] Thibodeaux[1] and he was found with a bullet between his eyes; what would you say if I told you that he was found?" At the time this question was asked, Henderson and Mims were well aware that Paul Thibodeaux was not dead. Investigator Henderson testified as to the petitioner's immediate reaction to the question: "Well, the first thing I noticed about him he swallowed real hard and he said, look, let me tell you something, that I didn't kill the man. I did not pull that trigger; Rubyn Smith did that." Sometime after the question was asked of the petitioner, he signed a statement confessing to the robbery at Martin's Mercantile. The petitioner was then informed that Thibodeaux was, in fact, alive.
The petitioner contends that the trial court erred to reversal in denying his motion to suppress the confession. He argues that the confession was the product of coercive police conduct and, thus, was not *Page 1134 
made voluntarily, knowingly, and intelligently. We agree.
The law with regard to the admissibility of a confession is aptly stated in Eakes v. State, 387 So.2d 855
(Ala.Cr.App. 1978):
 "A confession is presumed to be involuntary. Before its admission into evidence there must be evidence addressed to the trial judge sufficient to rebut that presumption and a showing that the confession was made without influence of either hope or of fear, unless the attending circumstances affirmatively disclose the voluntariness of the confession. Wallace v. State, 290 Ala. 201, 275 So.2d 634 (1973); Bush v. State, 282 Ala. 134, 209 So.2d 416 (1968). In order to be admissible a confession must be free and voluntary and cannot be the result of any direct or implied promises, however slight. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); Shotwell Mfg. Co. v. United States, 371 U.S. 341, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963); Bell v. Alabama, 5 Cir., 367 F.2d 243, cert. denied, 386 U.S. 916, 87 S.Ct. 859, 17 L.Ed.2d 788 (1966); Wallace, supra. The question of whether a confession was obtained by coercion or improper inducement can be determined only by examination of all the attendant circumstances. Boulden v. Holman, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969); Wallace, supra. Each case must stand or fall on its own merits for the constitutional inquiry into the issue of voluntariness requires more than a mere 'colormatching of cases.' Beecher v. Alabama, 389 U.S. 35, 88 S.Ct. 189, 191, 19 L.Ed.2d 35 (1967). The true test of determining whether extrajudicial confessions are voluntary is whether the defendant's will was overborne at the time he confessed and therefore not the product of a rational intellect and a free will. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); Elliott v. State, 338 So.2d 483 (Ala.Cr.App. 1976)."
Before a confession can be admitted, the trial court must be satisfied by a preponderance of the evidence that it was voluntarily made. This finding will not be disturbed on appeal, unless it is evident that the determination was palpably contrary to the weight of the evidence. Ex parteSingleton, 465 So.2d 443 (Ala. 1985). The state's evidence was insufficient in this case to show that the petitioner's confession was voluntarily made.
We view the statement of Chief Deputy Mims as being an affirmative misrepresentation to the petitioner that he (the petitioner) was suspected of killing Paul Thibodeaux. At the time the statement was made to the petitioner, both Henderson and Mims were well aware that Thibodeaux was not dead. The petitioner, clearly taken aback, denied the killing, but apparently confessed at some point during the interrogation after the misrepresentation had been made. It is apparent to us that the interrogating officers in this case were trying to get the petitioner to confess to the robbery at Martin's Mercantile by suggesting to him that Thibodeaux had been killed, the implication being that the petitioner might avoid prosecution for the murder of Thibodeaux if he confessed to the robbery. The state failed to introduce evidence sufficient to show that the petitioner's will was not overborne at the time he confessed. The conclusory testimony of Investigator Henderson to the effect that the petitioner's confession was voluntarily made is simply not sufficient, under the undisputed facts in this case, to show that the petitioner's confession was voluntarily made. We hold, therefore, that the petitioner's confession must be deemed not voluntary, but coerced. Consequently, the trial court committed reversible error in allowing it into evidence.
We note that certain affirmative misrepresentations made by police officers, not materially different from the one made in the present case, have also been found by the United States Supreme Court to violate a suspect's right to due process under the United States Constitution. See, e.g., Lynumn v.Illinois, 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963) (misrepresentation by police officers that a suspect would be deprived of state financial aid for her dependent children if she failed to cooperate with authorities rendered the subsequent confession *Page 1135 
involuntary); Spano v. New York, 360 U.S. 315,79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959) (misrepresentation by the suspect's friend that the friend would lose his job as a police officer if the suspect failed to cooperate, in addition to other evidence of official pressure and of fatigue, rendered his statement involuntary).
We think it prudent to reiterate here, as the United States Supreme Court did in Spano, supra, that in a case such as the present one "we are forced to resolve a conflict between two fundamental interests of society; its interest in prompt and efficient law enforcement, and its interest in preventing the rights of its individual members from being abridged by unconstitutional methods of law enforcement." 360 U.S. at 315,79 S.Ct. at 1203. The Court added:
 "The abhorrence of society to the use of involuntary confessions does not turn alone on their inherent untrustworthiness. It also turns on the deep-rooted feeling that the police must obey the law while enforcing the law; that in the end life and liberty can be as much endangered from illegal methods used to convict those thought to be criminals as from the actual criminals themselves. Accordingly, the actions of police in obtaining confessions have come under scrutiny in a long series of cases. Those cases suggest that in recent years law enforcement officials have become increasingly aware of the burden which they share, along with our courts, in protecting fundamental rights of our citizenry, including that portion of our citizenry suspected of crime. The facts of no case recently in this Court have quite approached the brutal beatings in Brown v. State of Mississippi, 1936, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682, or the 36 consecutive hours of questioning present in Ashcraft v. State of Tennessee, 1944, 322 U.S. 143, 64 S.Ct. 921, 88 L.Ed. 1192. But as law enforcement officers become more responsible, and the methods used to extract confessions more sophisticated, our duty to enforce federal constitutional protections does not cease. It only becomes more difficult because of the more delicate judgments to be made. Our judgment here is that, on all the facts, this conviction cannot stand."
360 U.S. at 320-21, 79 S.Ct. at 1205-06. As the Court stated inWatts v. Indiana, 338 U.S. 49, 55, 69 S.Ct. 1347,1350, 93 L.Ed. 1801 (1949): "Law triumphs when the natural impulses aroused by a shocking crime yield to the safeguards which our civilization has evolved for an administration of criminal justice at once rational and effective."
The judgment of the Court of Criminal Appeals is reversed and the cause is remanded to that court for proceedings consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
TORBERT, C.J., and MADDOX, JONES, ALMON, SHORES, BEATTY, ADAMS and HOUSTON, JJ., concur.
[1] Paul Thibodeaux, an acquaintance of the petitioner, was also charged in the robbery of Martin's Mercantile.