The appellant, Franklin Lavon Holmes, was convicted of robbery in the first degree after a jury trial and was sentenced to 20 years' imprisonment. Ala. Code 1975, § 13A-8-41. He appeals, raising one issue. He contends that the trial court committed reversible error in denying his motion to suppress his extrajudicial confession to the commission of the crime charged.
The state's evidence disclosed that Dan Kennedy, believing that there was a safe containing a large amount of money in the residence of James Hampton, entered into an arrangement with the appellant and Neil Woodard whereby the latter two would burglarize the Hampton residence and seize the contents of the safe, and the three of them would then divide the contents. While the appellant and Woodard were in the Hampton residence looking for the safe, they were surprised by the unexpected arrival of Hampton, his son and his daughter-in-law and their two children. The burglars bound and blindfolded the Hamptons and attempted to get them to tell where the safe was located by putting a pistol to their heads and threatening to kill them. Finally, abandoning their efforts *Page 25 
to locate the safe, they took several guns and some jewelry from the residence and several thousand dollars from the Hamptons' wallets and then left. The appellant did not testify. In fact, he offered no evidence in his defense.
The appellant contends that his confession was obtained as a result of promises of immunity and leniency. The record shows that, subsequent to the commission of the instant robbery, the accomplice Woodard, in return for what purported to be a promise of full immunity from prosecution (for anything except murder) by Billy Richardson, a state investigator, agreed to give the state information about crimes committed by a number of persons. While giving information to Richardson about several crimes, Woodard disclosed that he and the appellant were the parties who had robbed the Hamptons. Up to this time, the authorities did not know who had committed the Hampton robbery. Woodard was instructed by Richardson to call the appellant on the telephone and to ask him to come to the police station and give a statement concerning the robbery.
Woodard testified at the suppression hearing that he was further instructed by Richardson, in the presence of other officers, to inform the appellant that the appellant would be granted the same immunity as had been granted to Woodard in return for his statement and cooperation. Woodard testified that Richardson wanted his and the appellant's cooperation in order to prosecute Kennedy. He further testified that, during the telephone conversation, he advised the appellant that he would receive immunity from prosecution. The appellant's testimony at the suppression hearing corroborated Woodard's. Richardson, however, denied that he told Woodard to offer the appellant the same immunity. He also testified that he was present during Woodard's telephone conversation with the appellant, that Woodard made no mention of immunity, and that the appellant simply came to the station. Richardson further testified that, at the time of the call, he knew that the appellant knew that Woodard had been granted immunity.
The appellant subsequently came to the police station and, after being advised of his rights pursuant to Miranda v.Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), began giving a statement concerning the robbery to Officer Gerald Godwin, an investigator with the Morgan County Sheriff's Department. Several other officers and Woodard were present during this interrogation.
During the taking of the statement and after the appellant had linked himself to the robbery, the appellant apparently became concerned about the promise of immunity when Godwin mentioned that he would be charged, but could get probation. Specifically, Godwin told the appellant:
 "That's why I can't sit here and say if you give me a statement I promise you I'll go over there and get you probation. I can't say that. But I can say that I'll ask and not oppose that you get probation. The attorney can work it out if we don't oppose it to where you can get probation."
The appellant abruptly stopped the interrogation and said that he wanted to talk with Officer Richardson and Woodard. Richardson, Woodard, and the appellant went out into the hall, where a discussion of the immunity ensued. The appellant and Woodard testified that Richardson reassured them that the appellant would get the same immunity that had been granted to Woodard. Richardson denied this and stated that when they came out into the hall, the appellant asked him if he had the same immunity as Woodard, and he told him that he did not. Richardson testified that he believed that the appellant thought he had the same immunity as Woodard. The record of the suppression hearing shows the following:
 "A. [OFFICER RICHARDSON]: I know I was not in there when Franklin [the appellant] came in, and I talked to him when he came out of the room. It was obvious from his actions that he thought he had the same immunity [Woodard] did. . . .
". . . . *Page 26 
 "THE COURT: Wait just a minute. [T]his conversation in the hallway . . . that took place sometime after he had been in that room and then c[a]me out?
 "THE WITNESS [OFFICER RICHARDSON]: Yes, sir, Judge. He came out and I was out there in the hall, and he said, 'I have got the same immunity Woodard's got.' And I said, 'No, Franklin, you hadn't.'
"THE COURT: What was his reaction to that?
 "THE WITNESS: Well, he turned about as white as this paper.
 "THE COURT: So it's your conclusion that after he had started giving a statement inside, that he came out in the hallway and you told him that he did not have immunity and he, according to what you think and what you observed, thought he did have immunity?
 "THE WITNESS: Yes, sir. He said, 'Well, shit, I might as well go back in there and tell all the rest of it.'
". . . .
 "THE COURT: Have any idea what led him to believe that he had immunity?
"THE WITNESS: Probably listening to Woodard."
After the conversation in the hall, the appellant immediately returned to the interrogation room and, without further discussion or warnings, completed his statement, giving full details of the robbery. After this statement, the appellant apparently was not arrested but was permitted to leave.
After considering the above-stated evidence, the trial court entered the following order:
 "Upon consideration, this court finds from the evidence that defendant may have been operating under the impression that the detectives in this case intended to 'grant him immunity' from prosecution, but the court finds that during this interview it was made clear to the defendant that he was not immune from arrest and prosecution in this case. The defendant, with that clear understanding, elected to continue to talk to the detectives and give his statement. The court finds the statement to be voluntarily given. The motion to suppress is overruled and denied."
The Fifth Amendment privilege against self-incrimination protects an individual from being compelled by the state to be a witness against himself. Malloy v. Hogan, 378 U.S. 1,84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); U.S. Const. Amend. V, XIV.
 "It has long been held, under the right against self-incrimination, that an involuntarily given confession or incriminating statement is not admissible in a subsequent criminal prosecution. . . . The test . . . is whether the confession was free and voluntary; that is, it must not have been extracted by any sort of threats or violence, nor obtained by direct or implied promises, however slight, nor by the exertion of any improper influence."
C. Gamble, McElroy's Alabama Evidence § 200.01(1) (4th ed. 1991) (footnotes omitted). See also Jones v. State,572 So.2d 1305 (Ala.Cr.App. 1990).
Extrajudicial confessions are prima facie involuntary and inadmissible, and the burden is upon the state to show voluntariness and a Miranda predicate in order for them to be admitted. Lewis v. State, 535 So.2d 228 (Ala.Cr.App. 1988). Whether there was a waiver of the right to remain silent and the right to counsel and whether the confession was knowingly, voluntarily, and intelligently made must be decided from the particular facts and circumstances of each case, including the background, experience, and conduct of the accused — the totality of the circumstances. Thomas v. State, 373 So.2d 1167
(Ala. 1979), vacated on other grounds, 448 U.S. 903,100 S.Ct. 3043, 65 L.Ed.2d 1133 (1980); Magwood v. State, 494 So.2d 124
(Ala.Cr.App. 1985), aff'd, 494 So.2d 154 (Ala.), cert. denied,479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986).
Before a confession can be admitted, the trial court must be satisfied by a preponderance of the evidence that it was voluntarily made, and this finding will not be disturbed on appeal unless it is evident *Page 27 
that the determination was palpably contrary to the weight of the evidence. Ex parte McCary, 528 So.2d 1133 (Ala. 1988); Exparte Singleton, 465 So.2d 443 (Ala. 1985).
The transcript of the tape-recorded interrogation in the instant case shows that, immediately after Miranda warnings were given, Officer Godwin told the appellant that the warnings pertained only to the Hampton robbery and that anything else the appellant said could not be used against him in Morgan County. The appellant apparently had been charged with four offenses in Morgan County, i.e., three cases of theft in the first degree and the robbery charged in the instant case. The appellant then told Officer Godwin about the plans formulated by Kennedy to enter the Hampton residence and to steal the contents of Hampton's safe. He told Godwin that Kennedy furnished him and Woodard with pistols and that he drove them to the vicinity of the Hampton residence. They did not enter the residence on this occasion, however, because it appeared that someone was there. He told Godwin that about a week later Kennedy again drove him and Woodard to the residence. At this point in the interrogation, the appellant asked Godwin, "[I]s this going to help me . . .?" and Godwin stated, "It's going to knock three charges off of you in Morgan County." Then Godwin told the appellant:
 "You're going to go to jail, like I told you before, but I just want you to go on this one thing not on all four of them. Cause first degree robbery and three first degree thefts ain't good and also it's like I told [Woodard]. I can't promise you nothing, a damn thing about sentencing or whatever. But Mississippi [is] going to have a charge on you, I'm pretty sure. And whoever your attorney is, if he wants to come talk to me, even if they can work probation, I'm not going to oppose it. It's like I told Neal, if we had to work on all of them we would go to the people and get enough, Mississippi could charge you and we'd wait until yo're [sic] sentence and we'd charge you. Pretty soon you'd wind up as a habitual offender.
". . . .
 "Well, you're not going to be charged with those other three, I promise you that. . . .
". . . .
 "It really has, I mean we'll not screw you on anything, we'll be up front with you. That's why I can't sit here and say if you give me a statement I promise you I'll go over there and get you probation. I can't say that. But I can say that I'll ask and not oppose that you get probation. The attorney can work it out if we don't oppose it to where you can get probation. You've never had any convictions before. As a rule they usually do get probation. How many more charges, do you anticipate any more charges on him? You'd be a first time offender."
It was at this point in the interrogation that the appellant asked to talk with Richardson and Woodard in the hall. After the appellant returned to the interrogation room and continued with his confession, he stated to Godwin, "[A]ll of this is going to help me out. I've got your word?" Godwin said, "Yea." The appellant further stated, "[D]o you think I'm doing right?" Godwin said, "You're not screwing yourself, I'll tell you that."
The evidence concerning the promise of immunity is conflicting. The trial court, while finding that the appellant initially thought that he had been granted immunity, nevertheless apparently concluded, in finding the confession to be voluntary, that he had not been promised immunity. Even though we have serious reservations as to the trial court's ruling in this regard, we find it unnecessary to address this question because of subsequent promises of leniency and probation and the implied threat made to the appellant by Godwin, all of which rendered the confession involuntary. A reading of the transcript of the interrogation leads us to conclude that Officer Godwin clearly promised the appellant that, in return for his confession, three of the four felony charges against him in Morgan County would be dropped, ostensibly enabling him to avoid the risk of being sentenced *Page 28 
as an habitual offender. This promise of leniency was direct and substantial and, in our opinion, negated the voluntariness of the confession. Godwin's statement to the appellant that the state could arrange its prosecutions in conjunction with those in other states in such a way that the appellant would "wind up as a habitual offender" constitutes an implied threat. This threat is also based on false information. For any felony conviction to be used to enhance a sentence for a subsequent conviction, the act for which the defendant is subsequently convicted must occur after the prior conviction. See § 13A-5-9.
In addition, we believe that a fair reading of the statement by Godwin to the appellant in reference to probation — "[t]he attorney can work it out if we don't oppose it to where you can get probation" — constitutes a promise of probation in return for the appellant's confession and also renders the confession involuntary.
We find that Godwin's promises of leniency and probation and his implied threat, under the circumstances existing when they were made, would have necessarily engendered a hope of favor or an apprehension of harm in the appellant's mind. For these reasons, the appellant's confession was not voluntarily given and should have been excluded from the consideration of the jury. The overruling of the motion to suppress by the trial court constituted reversible error. The trial court's ruling that the confession was voluntary was palpably contrary to the weight of the evidence.
REVERSED AND REMANDED.
BOWEN, TAYLOR and McMILLAN, JJ., concur.
MONTIEL, J., dissents with opinion.