Leon McLeod, Jr., was indicted and convicted for the murder of James D. McKissick, see Alabama Code 1975, § 13A-6-2. He was sentenced to life imprisonment. The appellant raises one issue on appeal. He claims that the trial court erred by failing to suppress his statement to police officers because, he says, the statement was involuntary.
The evidence tended to show that on September 27, 1994, Acadena King Carstarphen, her boyfriend, James McKissick, and Cynthia McLeod, the appellant's wife, went to the McLeod's house to "cook" some cocaine. Leon McLeod came home while Carstarphen and Cynthia McLeod were in the kitchen cooking cocaine in the microwave and McKissick was on the porch. McKissick followed McLeod into the house. McLeod asked why McKissick was there, and Cynthia McLeod told him that McKissick was Carstarphen's boyfriend. McLeod left and returned home 10 to 20 minutes later. McKissick was sitting at the kitchen table with a bulge of a gun visible in his pants pocket. McLeod again asked why McKissick was there. McLeod, seeing the cocaine activity, allegedly told Cynthia he wanted half of whatever she was getting out of it. She, Carstarphen, and McKissick chuckled, but McLeod did not. It was apparent that McLeod was not pleased, so Carstarphen said that she and McKissick were going to leave. Allegedly there were some words between McLeod and McKissick. After the verbal exchange, McLeod pulled a gun and shot McKissick in the head three times. McKissick died as a result of the wounds.
On December 1, 1994, Officer Paul Burch of the Mobile County street enforcement narcotics team served a search warrant at the McLeod's residence, based on information from a confidential informant.[1] Officer Burch recovered a 9mm. Ruger in the bedroom. When he recovered this gun, he did not have any information regarding an investigation of murder involving the McLeods. McLeod was arrested at the scene. While en route with the McLeod to the police station, Officer Burch was notified by the confidential informant that the appellant had previously provided false information to Mobile detectives in reference to a murder McLeod was involved in (presumably McKissick's murder). After arriving at the station, Officer Burch advised McLeod of his Miranda rights, which McLeod waived. Officer Burch also said that he did not make any promises of leniency other than to tell McLeod that if he wanted to cooperate, he would make his cooperation known to the district attorney and to the court. McLeod said the gun had been used in a homicide he was involved in. Forensic evidence confirmed that the weapon was the one that had been used to kill McKissick.
McLeod contends that his statement concerning the gun was involuntary because Officer Burch had told him that if he cooperated, Burch would make his cooperation known to the district attorney and the court. McLeod made a timely objection to the admission *Page 725 
of this statement into evidence, thus preserving the issue for review on appeal.
The state relies on Gaddy v. State, 698 So.2d 1100 (Ala.Cr.App. 1995), to support its argument that the appellant's statement was voluntary. In that case the court stated:
 "The appellant cites Ex parte Weeks, 531 So.2d 643
(Ala. 1988), in support of his argument that the officer's offer to make the appellant's cooperation known to the court constituted an improper inducement, rendering the appellant's statement involuntary and that it therefore should not have been admitted into evidence. In Ex parte Weeks, supra, the Alabama Supreme Court found improper an officer's statement to a defendant that `"[He] wanted his cooperation in this matter" and that if he confessed to his part in the burglary "He [the officer] would make it known to the district attorney."' Id. at 644. The Court cited Womack v. State, 281 Ala. 499, 205 So.2d 579 (1967), a murder case in which the defendant was told that `it would "go lighter" on him if he talked. 281 Ala. at 506, 205 So.2d at 585.' Id. The Court, in Womack, determined that the statement constituted an improper inducement and that it gave the defendant `"real hope for lighter punishment."' 107 See also Prince v. State, 584 So.2d 889, 894 (Ala.Cr.App. 1991) (this court held that, considering the totality of the circumstances, an officer's statement `that things could be worked out and that he knew that a capital murder charge would not "stay" on the appellant, by its nature, could have generated such a hope in the appellant that he may have been improperly induced to make his statement').
 "However, the situation in Ex parte Weeks, supra, is distinguishable from that in the instant case. The officer in Ex parte Weeks actually bargained with the defendant, by stating that if the defendant confessed, he would make his cooperation known to the district attorney. In this case, the officer informed the defendant that he was going to make his cooperation known to the court unconditionally; thus, the confession was not actually `bargained for' or directly induced. Moreover, in Ex parte Weeks, supra, at 644, the officer acknowledged on cross-examination that he would `"give something favorable to [the defendant] if he would help."' In the present case, the interrogating officer consistently stated that he made the appellant no promises and offered no hope for rewards. The officer simply told the appellant that he would make his cooperation t known to the court and, subsequently, stated that he in fact did so."
698 So.2d at 1112-13.
Our review of the record reveals that the police conduct complained of in this case is more like the conduct of the officer in Ex parte Weeks, 531 So.2d 643 (Ala. 1988), than the conduct of the officer in Gaddy. During the suppression hearing, Officer Burch testified as follows:
 "Q [Prosecutor]. Now, prior to talking to Mr. McLeod, did you advise him of his Miranda rights?
"A [Officer Burch]. I did.
"Q. And can you tell me how you did that?
 "A. I read him his Miranda rights from a form, a Miranda form. He stated he understood it and signed that he waived his rights.
"Q. And did all this take place there in the house?
 "A. No, the waiver of rights took place back at the Bay Hass Building.
 "Q. Did you talk to him at all before you asked him the language, before he signed the waiver?
"A. Nothing other that personal information.
 "Q. Did you or anyone in your presence threaten Mr. McLeod in any way?
"A. No ma'am.
 "Q. Did you or anyone in your presence offer him any hope of immunity?
"A. No.
". . . .
"Q. Did you make him any promises of leniency ?
 "A. No, ma'am, other than he said he wanted to cooperate. And we said if he cooperated we'd make his cooperation *Page 726 known to the District Attorney and to the Court."
(Emphasis added.) Later in open court during direct examination by the state and before McLeod renewed his motion to suppress evidence of his statement, Officer Burch testified as follows:
 "Q. Did you offer him [McLeod] any reward or any hope of any reward?
 "A. No, ma'am. The statement that I made to him, which is a standard statement, is that if he chose to cooperate any cooperation would be made known to the District Attorney's office and the Court.
"Q. And when did you make that statement?
 "A. That was while we had started to talk, if he wanted to cooperate or not."
(Emphasis added.) Officer Burch's offer to make the appellant's cooperation known to the district attorney and the court contained a condition precedent. Unlike the unconditional promise made in Gaddy, the offer here was conditioned on McLeod's cooperation: if McLeod would cooperate, his cooperation would be made known to the authorities.
In determining whether the officer's statements to McLeod constituted an improper inducement, we must view the offer in the context of the totality of the circumstances.
 "In determining whether a statement was obtained by coercion or by improper inducement, all surrounding circumstances of the statement and the defendant must be examined in a totality of the circumstances analysis. Boulden v. Holman, 394 U.S. 478[, 89 S.Ct. 1138, 22 L.Ed.2d 433] (1969); Beecher v. Alabama, 389 U.S. 35[, 88 S.Ct. 189, 19 L.Ed.2d 35] (1967); Eakes v. State, 387 So.2d 855 (Ala.Cr.App. 1978). `The true test of determining whether extra-judicial confessions are voluntary is whether the defendant's will was overborne at the time he confessed and therefore not the product of a rational intellect and a free will. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); Elliott v. State, 338 So.2d 483 (Ala.Cr.App. 1976).' Eakes v. State, supra at 859.
 "Thus, the attendant circumstances concerning both the making of the alleged inducement and the resulting statement, as well as characteristics of the individual defendant should be examined."
Gaddy, 698 So.2d at 1114.
While no specific benefit was offered, we believe that, under the circumstances, it was reasonable for McLeod to regard the offer as a way to help himself At the time of the confession, McLeod was 25 years old. In addition, having never been arrested before this arrest,[2] he apparently had no significant experience with arrest and interrogation procedures, which made it more reasonable for him to believe that Officer Burch had the power to affect the outcome of any subsequent proceedings. We review these circumstances under the analysis expressed in Jonesv. State, 572 So.2d 1305, 1307 (Ala.Cr.App. 1990):
 "`The true test of voluntariness of extra-judicial confessions is whether, under all the surrounding circumstances, they have been induced by a threat or a promise, express or implied, operating to produce in the mind of the prisoner apprehension of harm or hope of favor; and if so, whether true or false, such confessions must be excluded from the consideration of the jury as having been procured by undue influence.'
 "Guenther v. State, 282 Ala. 620, 623, 213 So.2d 679, 681 (1968), cert. denied, 393 U.S. 1107, 89 S.Ct. 916, 21 L.Ed.2d 803 (1969). See also Ex parte McCary, 528 So.2d 1133 (Ala. 1988).
 "`The test applicable in both state and federal prosecutions is whether the confession was free and voluntary; that is, it must not have been extracted by any sort of threats or violence, nor obtained by direct or implied promises, however slight, nor by the exerting of any improper influence.' *Page 727 
 "C. Gamble, McElroy's Alabama Evidence § 200.01 (3d ed. 1977) (footnotes omitted)."
Under the totality of the circumstances of this case, McLeod's statement was a bargained for confession; it was improperly induced by a promise made by Officer Burch that reasonably engendered a hope of favor in McLeod's mind. "Where a suspect is subjected to custodial questioning regarding alleged criminal activity, such an express promise would necessarily engender a hope of favor in the suspect's mind. Because the statement was not voluntarily given, it should have been excluded from the consideration of the jury." Ex parte Weeks, 531 So.2d at 644.
In conclusion, the state did not sustain its burden of proof of voluntariness in regard to McLeod's statement.
 "Because all extrajudicial confessions are prima facie involuntary, the state has the burden of proving voluntariness. Ex parte Callahan, supra, [471 So.2d 463 (Ala. 1985]; Magwood v. State, supra, [494 So.2d 124 (Ala.Cr.App. 1985)]. Unless the trial judge's conclusion that the inculpatory statement was voluntary and admissible is supported by evidence, it will not be upheld. Malone v. State, 452 So.2d 1385 [1386] (Ala.Cr.App. 1984)."
Ex parte Weeks, 531 So.2d at 645. While Officer Burch testified that he did not threaten, offer any hope of immunity, or make any promise of leniency to the appellant, he, in fact, contradicted this testimony by also testifying that he told McLeod he would make his cooperation known to the district attorney and the court — if he cooperated. This implied promise for McLeod's cooperation contravenes any proof on the part of the state to show the statement was voluntary.
For the above reasons, we must reverse the conviction and remand this case to the trial court.
REVERSED AND REMANDED.
All Judges concur.
[1] For the benefit of the reader we note that evidence introduced outside the presence of the jury revealed that this search warrant was based on information from the confidential informant that cocaine was being sold at the residence. Evidence not before the jury also established that crack cocaine was seized during the execution of the warrant.
[2] The presentence report filed in this case shows no prior arrests. The arrest that resulted in the discovery of the murder weapon, the ultimate confession of the appellant, and the instant proceeding resulted from the search warrant executed by Officer Burch.