719 So.2d 274 (1998)
Lebarron Antjuan CRAIG
v.
STATE.
CR-96-1068.
Court of Criminal Appeals of Alabama.
March 6, 1998.
Rehearing Denied May 8, 1998.
Certiorari Denied July 17, 1998.
*275 Joseph D. Quinlivan, Jr., Mobile, for appellant.
Bill Pryor, atty. gen., and Sandra J. Stewart, asst. atty. gen., for appellee.
Alabama Supreme Court 1971471.
*276 McMILLAN, Judge.
The appellant, Lebarron Antjuan Craig, was convicted of capital murder for the killing of Kim Huynh during the course of a robbery. After both the appellant and the State waived a sentencing hearing, he was sentenced to life imprisonment without the possibility of parole. The appellant raises four arguments in this appeal.

I.
The appellant alleges that his conviction is due to be reversed because, he says, the trial court erroneously allowed his taped-recorded confession to be admitted into evidence. According to the appellant, the only reason he confessed to killing Huynh was because the officer taking his statement, Sgt. Wayne Farmer, told him that it would be in his "best interest" to tell him what happened. Because such an assurance does not constitute an improper inducement, the appellant's confession cannot be deemed involuntary and the failure to suppress it was not reversible error.
Both the appellant and Sgt. Farmer testified at the suppression hearing. According to the appellant, the police woke him up on the morning of March 16, 1995, handcuffed him, and took him to police headquarters. When they arrived at police headquarters, Sgt. Farmer advised him of his rights both before taking a taped-recorded statement and again on the tape recording. However, the appellant testified that before he turned the tape recorder on, Sgt. Farmer told him that it would be in his "best interest" to tell him what happened in the store when Huynh was killed and that if the appellant told him he would tell the district attorney that he cooperated. Although no other specific promises were made, the appellant argues that he interpreted Farmer's statement to mean that Farmer would help him out in his capacity as a police officer.
At the suppression hearing, Sgt. Farmer testified that he first advised the appellant of his Miranda rights at the appellant's residence, where he read those rights from a card. Sgt. Farmer said that when they got back to his office, he noticed scratches on the appellant's legs and asked him where he got them. After the appellant replied that he did not recall, Sgt. Farmer told him that he was a suspect in Huynh's death and that if someone else pulled the trigger, he might want to tell his side of the story. The appellant pulled his chair closer to Farmer and asked, "What if I pulled the trigger?" Sgt. Farmer testified that he then told the appellant that he believed the appellant would want to tell his side of the story in that case as well. Sgt. Farmer denied offering any hope of benefit, promise, or reward, or making any threat to the appellant. Furthermore, Sgt. Farmer denied using the specific words "it might be in [your] best interest." However, in his written narrative, Sgt. Farmer wrote, "In my opinion it would be in his best interest to let us know what happened," and admitted during cross-examination that "in essence" that is what he told the appellant.
During his statement, the appellant admitted that he shot Huynh. According to the appellant, on March 13, 1995, when he and Michael Coleman arrived at the convenience store at which Huynh was working to buy a pack of cigarettes, they "walked in joking around." The appellant surmised that Huynh thought they were trying to rob him, because Huynh swung one of two wine bottles he was holding, striking the appellant on his right shoulder. The appellant stated that he then fired a warning shot, trying to scare Huynh. After calming down for a minute, Huynh then started "talking crazy," telling the appellant and Coleman to "Get out of my store, get out of my store. No. No." According to the appellant, Huynh then "kicked at" him. The appellant then shot him "accidentally" as Huynh was trying to get behind the counter. The appellant admitted that after shooting Huynh he went behind the counter with Coleman, taking some cigarettes and some money. They went to the back of the store and left on a bicycle they had borrowed.
Although the record establishes that Sgt. Farmer read the appellant his Miranda rights, to be admissible, the confession must be shown to have been voluntary. Wyatt v. State, 620 So.2d 77, 78 (Ala.Cr.App. 1992). "Because all extra-judicial confessions *277 are prima facie involuntary, the State has the burden of proving voluntariness." Hamlet v. State, 574 So.2d 951, 953 (Ala.Cr.App.1990). The State must affirmatively show that the confession was not obtained through the use of any threats or inducements. The Supreme Court of Alabama stated in Womack v. State, 281 Ala. 499, 507, 205 So.2d 579 (Ala.1967):
"The true test is whether, under all the surrounding circumstances, [extra-judicial confessions] have been induced by a threat or a promise, express or implied, operating to produce in the mind of the prisoner apprehension of harm or hope of favor. If so, whether true or false, such confessions must be excluded from the consideration of the jury as having been procured by undue influence. Redd v. State, 69 Ala. 255, 259.
"The rule is clearly settled in Alabama, as elsewhere, that confessions cannot be given in evidence against a person charged with a crime, until they are first shown to the satisfaction of the court to have been voluntarily made. Any, the slightest menace or threat, or any hope engendered or encouraged that the prisoner's case will be lightened, meliorated, or more favorably dealt with if he will confess; either of these is enough to exclude the confession thereby superinduced. Any words spoken in the hearing of the prisoner which may, in their nature, generate such fear or hope render it not only proper but necessary that confessions made within a reasonable time afterwards shall be excluded, unless it is shown by clear and full proof that the confession was voluntarily made after all trace of hope or fear had been fully withdrawn or explained away and the mind of the prisoner made as free from bias and intimidation as if no attempt had ever been made to obtain such confessions. Owens [Owen] v. State, 78 Ala. 425, 428."
This Court has previously used a "bargained with" test to determine whether an extra-judicial confession was induced by a promise. See Gaddy v. State, 698 So.2d 1100, 1113 (Ala.Cr.App.1995), and McLeod v. State, 718 So.2d 723 (Ala.Cr.App.1996). The term "bargained" was used in Gaddy because in that case the defendant began confessing before the interrogating officer promised him he would tell the court about his cooperation. The officer's promise was made in response to the defendant's confession and was not conditioned upon the defendant's confessing. In other words, the officer did not use his promise to "bargain for" the defendant's confession.
The Supreme Court of Alabama, however, expressly rejected the "bargained with" language. In Ex parte Gaddy, 698 So.2d 1150, 1154 (Ala.1997), the Court stated:
"The key to our analysis of promises or inducements is to determine whether those promises or inducements actually caused the confession, not just whether the promises or inducements were made by the officer. However, in its opinion affirming Gaddy's conviction, the Court of Criminal Appeals states too broadly that a confession should not be excluded unless the evidence shows that the interrogator `bargained with' the defendant for the confession. [Gaddy v. State] 698 So.2d at 1113. While the use of the word `bargain' may be helpful in determining whether a confession was voluntary, it could also confuse some into thinking that some sort of protracted negotiation is needed to make a confession involuntary. This Court stated in [Ex parte] Matthews [601 So.2d 52 (Ala. 1992)]:
"`[I]t is well grounded in Alabama law that "[i]n order to be admissible a confession must be free and voluntary and cannot be the result of any direct or implied promises, however slight." Ex parte Johnson, 522 So.2d 234, 237 (Ala. 1988) (quoting Eakes v. State, 387 So.2d 855, 859 (Ala.Crim.App.1978)).'
"601 So.2d at 54 (emphasis added [in Gaddy])."
According to Ex parte Gaddy, the "bargained with" test was too weighted in favor of the state, implying that "protracted negotiation" was required before a promise or inducement made a confession involuntary. The Gaddy Court emphasized that even the slightest of inducements could render a confession involuntary and inadmissible. This "however slight" standard has been applied numerous times by Alabama courts in holding that defendants' statements following remarks *278 by interrogators, which were frequently vague and implied promises, were inadmissible because the State could not show voluntariness. Ex parte Matthews, 601 So.2d 52 (Ala.1992); Weeks v. State, 531 So.2d 643 (Ala.1988); Womack v. State, 281 Ala. 499, 205 So.2d 579 (Ala.1967); Prince v. State, 584 So.2d 889 (Ala.Cr.App.1991); Holmes v. State, 598 So.2d 24 (Ala.Cr.App. 1992); Howard v. State, 586 So.2d 289 (Ala. Cr.App.1991); Jones v. State, 572 So.2d 1305 (Ala.Cr.App.1990); Goodson v. State, 540 So.2d 789 (Ala.Cr.App.1988); and Eakes v. State, 387 So.2d 855 (Ala.Cr.App.1978).
The "however slight" standard, however, has apparently been abrogated by the Alabama Supreme Court in its recent decision in McLeod v. State, 718 So.2d 727 (Ala. 1998). In that opinion, the Court again addressed the "bargained with" standard it had previously addressed in Ex parte Gaddy. However, whereas the Court in Gaddy rejected the "bargained with" standard because it did not adequately protect the defendant from certain coercive conditions, in McLeod the Court rejected the "bargained with" standard because it did not defer sufficiently to the State. Rather than citing the "however slight" language, the McLeod court focused on the "overborne" test, stating:
"In Gaddy, 698 So.2d at 1154, this Court expressly disapproved the `bargained with' test used by the Court of Criminal Appeals and held that a court should examine the totality of the circumstances to determine if an implied promise of leniency caused the defendant to make the confession___ i.e., if it overbore the will of the defendant. Thus, the test of involuntariness of a confession, or other inculpatory statement, is not whether the defendant bargained with the police, but whether in his discussions with the police, which may have included bargaining, the defendant's will was overborne by `apprehension of harm or hope of favor.'"
McLeod, 718 So.2d at 729.
The Court in McLeod focused on the "totality of the circumstances" surrounding McLeod's confession rather than merely the interrogator's statement. McLeod, 718 So.2d at 729. Under this analysis, implied and/or vague promises, absent coercive conditions and given a defendant whose personal characteristics do not make him unusually susceptible to inducement, are not sufficient to render a confession involuntary. McLeod, 718 So.2d at 724. The United States Supreme Court has also abandoned the "however slight" standard,[1] and the McLeod court cited numerous federal cases demonstrating that the federal courts have held that certain statements, although promising the defendant that his or her cooperation would be passed on to the prosecutor, were not the kind of statements that warranted the suppression of the defendant's subsequent confession. McLeod, 718 So.2d at 724 n. The Eleventh Circuit Court of Appeals has held:
"A statement made by a law enforcement agent to an accused that the accused's cooperation would be passed on to judicial authorities and would probably be helpful to him is not a sufficient inducement so as to render a subsequent incriminating statement involuntary."
United States v. Davidson, 768 F.2d 1266, 1271 (11th Cir.1985), citing United States v. Ballard, 586 F.2d 1060, 1063 (5th Cir.1978).
Under the "overborne" standard expressed in McLeod and used by federal courts, the statement made by Sgt. Farmer was not coercive. When determining the admissibility of a confession, this Court must look at the entire circumstances, not only the behavior of the interrogators in creating pressure, but also the defendant's experience with the criminal justice system and personal characteristics. McLeod, 718 So.2d at 729; Ex parte Gaddy, 698 So.2d at 1154, 1155. The appellant in this case had broad experience with the criminal justice system; he had either an eighthor ninthgrade education; and the record does not reflect that he had any mental deficiencies.[2] These factors indicate *279 that the appellant was even less susceptible to inducement than was McLeod, who had had little or no previous experience with the criminal justice system. Furthermore, the statement made by Sgt. Farmer offered no specific reward for confessing and was analogous to statements that the defendant's cooperation "would probably be helpful" permitted in Davidson. There was no evidence that Sgt. Farmer used any means of intimidation or any other improper methods of interrogation. He was merely giving his opinion to the appellant regarding the appropriateness of his confessing. Given the totality of the circumstances, the State met its burden of proving that the appellant's confession was voluntary. We will not reverse the trial court's finding that the State did meet this burden unless that finding is "contrary to the great weight of the evidence or is manifestly wrong." Ex parte Pardue, 661 So.2d 268, 271 (Ala.1994). The trial court did not err in admitting the appellant's confession into evidence.

II.
The appellant asserts that his conviction is due to be reversed because he was not read juvenile Miranda rights pursuant to Rule 11(A), Ala.R.Juv,P., advising him that he had the right to consult with his counsel, a parent, or a guardian before making any statement. However, this issue was not preserved for review on appeal because the record does not reflect that the appellant ever made any objection before or during the trial to the failure to administer such warnings. "Constitutional issues must be raised at trial before they can be considered by this court." Cagle v. State, 504 So.2d 1225, 1226 (Ala.Cr. App.1987).

III.
The appellant further contends that the trial court erred by failing to give a requested jury instruction on self-defense. However, § 13A-3-23(b), Code of Alabama 1975, provides that "a person is not justified in using deadly physical force upon another person if it reasonably appears or he knows that he can avoid the necessity of using such force with complete safety: (1) By retreating." The evidence is uncontradicted that the appellant could reasonably have retreated instead of using deadly force against Huynh. In fact, the appellant stated, "[I]f I just ran out the store ... he wouldn't've been dead." Furthermore, the burden is on the appellant to produce evidence that retreat was not possible. "Where the accused claims the [use of deadly physical force] was in self-defense, the onus rests on him to show that he could not safely retreat without increasing or apparently increasing his peril." Weaver v. State, 500 So.2d 1278, 1279 (Ala. Cr.App.1986), citing McDonald v. State, 340 So.2d 80, 84 (Ala.Cr.App.), cert. denied, 340 So.2d 84 (Ala.1976). "A court should not instruct on self-defense when there is no evidence to sustain the plea ... or when the defendant's evidence showed that he did not act in self-defense." Therefore, the trial court's refusal to instruct the jury on self-defense was not error.

IV.
The appellant contends that the trial court committed reversible error by refusing to instruct the jury on heat-of-passion manslaughter as he requested. This Court has previously stated:
"A person accused of a greater offense has a right to have the court charge on the lesser offenses included in the indictment, when there is a reasonable theory from the evidence supporting his position. Chavers v. State, 361 So.2d 1106 (Ala.1978); Fulghum v. State, 291 Ala. 71, 277 So.2d 886 (1973); Wiggins v. State, 491 So.2d 1046 (Ala.Cr.App.1986); Wilkerson v. State, 486 So.2d 509 (Ala.Cr.App.1986). A court may properly refuse to charge on a lesser included offense only when (1) it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense, or (2) the requested charge would have a tendency to mislead or confuse the jury. Lami v. *280 State, 43 Ala.App. 108, 180 So.2d 279, cert. denied, 278 Ala. 710, 180 So.2d 282 (1965). Every accused is entitled to have charges given, which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, however weak, insufficient, or doubtful in credibility. Ex parte Stork, 475 So.2d 623 (Ala.1985); Chavers v. State, supra; Burns v. State, 229 Ala. 68, 155 So. 561 (1934). Section 13A-1-9(b) provides, `The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense.'
"`The "safer" practice is to charge upon all degrees of homicide: "(I)t is much the safer rule to charge upon all degrees of homicide included in the indictment, when a party is on trial for murder, unless it is perfectly clear to the judicial mind that there is no evidence tending to bring the offense within some particular degree." Pierson v. State, 99 Ala. 148, 153, 13 So. 550 (1892)[(1893)], approved in Williams v. State, 251 Ala. 397, 399, 39 So.2d 37 (1948).' Phelps v. State, 435 So.2d 158, 163 (Ala.Cr.App. 1983).'"
Anderson v. State, 507 So.2d 580, 582-583 (Ala.Cr.App.1987).
The trial court must first determine if there is any evidence to support a heat-of-passion manslaughter charge. Once this preliminary determination is made, it is exclusively the jury's role to weigh the evidence and to determine whether the appellant has proved sufficient provocation and lack of cooling time. Cox v. State, 500 So.2d 1296, 1298 (Ala.Cr.App.1986).
According to the Alabama Supreme Court in Reeves v. State, 186 Ala. 14, 65 So. 160, 161 (1914):
"And such provocation can, in no case, be less than an assault, either actually committed, or menaced under such pending circumstances as reasonable to convince the mind that the accused has cause for believing, and did believe, he would be presently assaulted, and that he struck, not in consequence of a previously formed design, general or special, but in consequence of the passion suddenly aroused by the blow given, or apparently about to be given."
The only evidence in the present case that could conceivably support a heat-of-passion manslaughter charge is the appellant's tape-recorded confession. According to this statement, the appellant asserted that Huynh hit him on the right shoulder with a wine bottle. Although according to the confession, the appellant fired a warning shot in response to this strike, he admitted that there was enough time for Huynh to calm down before the appellant shot Huynh. Therefore, even if provocation was established by Huynh's striking the appellant with a wine bottle, the appellant's shooting Huynh cannot be deemed a result of such provocation. Gholston v. State, 494 So.2d 876, 883 (Ala.Cr.App.1986).
Although the appellant asserted that Huynh calmed down after the warning shot, Huynh shortly thereafter began "talking crazy" and kicking at the appellant. However, the appellant admitted that at the same time, Huynh was trying to get behind the counter. The appellant maintains that he shot Huynh "accidentally" in response to this behavior. This futile effort by Huynh, who was armed with merely two wine bottles, to escape from the appellant, who was firing a loaded gun, cannot be deemed as sufficient legal provocation to arouse heat of passion. Such provocation must be of a "nature calculated to influence the passions of the ordinary, reasonable man." Biggs v. State, 441 So.2d 989, 992 (Ala.Cr.App.1983). There was no rational basis for a heat-of-passion manslaughter charge in this case and the trial court's refusal to give such a charge to the jury was not error. Therefore, the appellant's conviction is due to be affirmed.
AFFIRMED.
All judges concur except BASCHAB, J., concurs in the result, with opinion.
BASCHAB, Judge, concurring in the result.
I agree with the majority's holding that the appellant's confession was voluntary. *281 However, I disagree with the majority's statement that McLeod v. State, 718 So.2d 723 (Ala.1998), has apparently abrogated the concept that an inducement, however slight, may render a confession involuntary. The majority apparently bases this conclusion on the assumption that the "however slight" language and the "overborne" language are incompatible.
In Ex parte Gaddy, 698 So.2d 1150, 1154 (Ala.1997), the Alabama Supreme Court stated the following standard for determining whether a confession is voluntary:
"`"The issue is whether defendant's admissions made subsequent to the promise were the product of defendant's free will, or were coerced through the overbearing of defendant's free will, for while the courts are careful to exclude confessions obtained by promises, this does not require the exclusion of what are, in fact, voluntary statements. Under this rule, what renders the confession involuntary is that it was obtained as the result of the promise...."`"
(Emphasis added.)
Under the "however slight" language, a confession is involuntary if it is the result of a direct or implied promise or inducement, no matter how slight that promise or inducement may be. As the Alabama Supreme Court stated in Gaddy, "[d]etermining whether the [officer's] statement induced the confession brings into play the totality-of-the-circumstances test." Ex parte Gaddy, 698 So.2d at 1154. Although McLeod did not cite the "however slight" language, it did emphasize that a statement will be rendered involuntary if a defendant's will is overborne by an inducement or implied promise. Like Gaddy, McLeod states that, when determining whether the inducement overbore the defendant's will, courts must consider the totality of the circumstances surrounding the confession.
It is apparent that the "overborne" test does not abrogate the concept that a promise or inducement, however slight, may render a confession inadmissible if it was a result of the promise or inducement. Rather, these concepts are intertwined. In determining whether the slight promise or inducement actually caused the confession, courts look to the totality of the circumstances to decide whether the defendant's will was overborne.
NOTES
[1] See Arizona v. Fulminante, 499 U.S. 279, 284-85, 111 S.Ct. 1246, 1251, 113 L.Ed.2d 302 (1991).
[2] C. Van Rosen, Ph.D., who performed an "Outpatient Forensic Evaluation Report" for the purposes of determining the appellant's competency to stand trial and of assessing his mental condition at the time of the alleged offense, reported that the appellant was not psychotic, that he showed little evidence of any break with reality, and that he had trouble distinguishing between right and wrong only because of an antisocial personality.